**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed November 13, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00612-CV

## JAVIER GONZALEZ, Appellant

## V.

## CHAMPION TECHNOLOGIES, INC., Appellee

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2009-59428**

## O P I N I O N

Javier Gonzalez appeals from a summary judgment in favor of his former employer, Champion Technologies, Inc., in connection with Gonzalez's claims for employment discrimination, retaliation, and fraud. In two issues, Gonzalez contends that the trial court erred in sustaining numerous objections to his lengthy summary judgment affidavit and in granting summary judgment in favor of Champion on his claims. We affirm in part and reverse and remand in part.

# I. Applicable Law

## A. Gonzalez's Causes of Action

Gonzalez pleaded four claims against Champion:  (1) employment discrimination based on race, (2) employment discrimination based on national origin, (3) retaliation for having complained about certain discriminatory acts, and (4) fraud.  Gonzalez brought his discrimination and retaliation claims under Chapter 21 of the Texas Labor Code, which is also known as the Texas Commission on Human Rights Act (TCHRA).  Tex. Lab. Code §§ 21.001-21.556.  Among its provisions, the TCHRA renders unlawful certain types of discriminatory employment practices as well as retaliation by an employer for an employee's opposition to or complaints about such practices.  *See, e.g., id.* §§ 21.051, 21.055.[1]  Gonzalez specifically asserted that he was discriminated against on the basis of his race and his national origin and that he was retaliated against.

In resolving discrimination cases, courts utilize a system of "burden-shifting" in which the burden of production shifts from plaintiff to defendant and then back to the plaintiff.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this system, the plaintiff must first present a prima facie case of discrimination establishing he or she was (1) a member of a protected class, (2) qualified for the employment position at issue, (3) subject to an adverse employment action, which includes termination, and (4) replaced by someone outside of the protected class.  *Reeves*, 530 U.S. at 142; *Ysleta I.S.D. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to show that the employee was terminated for a legitimate, nondiscriminatory purpose.  *Reeves*, 530 U.S. at 142.  If the defendant presents a

---

[1] The TCHRA was patterned after federal anti-discrimination statutes in order to carry out the policies elucidated in Title VII of the Civil Rights Act of 1964.  *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001).  Thus, in analyzing a TCHRA claim, we may seek guidance not only from Texas cases, but from analogous federal statutes and cases as well.  *Id*. at 476.

legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.). A plaintiff can avoid summary judgment if the evidence taken as a whole creates a fact issue as to whether the employer's stated reason was not what actually motivated the employer *and* creates a reasonable inference that discriminatory intent was a determinative factor in the adverse employment action. *Chandler v. CSC Applied Techs., LLC*, No. 01-10-00667-CV, 2012 WL 2924396, at *9 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet. h.). Although the burden of production shifts as described, the ultimate burden of persuasion remains on the plaintiff. *E.g., id.* at *8.

In a retaliation case, the plaintiff must first make a prima facie showing that (1) he or she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055; *Dias*, 214 S.W.3d at 676. If the plaintiff meets this requirement, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the adverse employment action. *Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. The plaintiff then assumes the burden to present proof that the stated reason was pretextual. *Armendariz v. Redcats USA, L.P.*, No. 08-11-00010-CV, 2012 WL 2336252, at *2 (Tex. App.—El Paso June 20, 2012, no pet.).

Gonzalez also pleaded fraud. The elements of common law fraud are (1) a material representation was made; (2) that was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the

truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on it; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). "Material" means that a reasonable person would attach importance to the statement and would be induced to act on the information provided. *Id.* at 337–38. Whether a statement is actionable often depends on the circumstances in which a statement is made. *Id.* Relevant circumstances include the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).

## B. Summary Judgment Standards

Champion raised both traditional and no-evidence grounds in its motion for summary judgment, and the trial court did not specify on which grounds it based its judgment. *See* Tex. R. Civ. P. 166a(c), (i). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Because summary judgment is a harsh remedy, we strictly construe all related procedural and substantive matters against the movant. *E.g., Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 423 n.14 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## C. Review of Evidentiary Rulings

We review a trial court's evidentiary determinations under an abuse-of-discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). To obtain reversal of a judgment based upon an error in the trial court, the appellant must show not only that error occurred, but also that it probably caused rendition of an improper judgment or prevented the appellant from properly presenting the case to this

4

court. Tex. R. App. P. 44.1(a); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). To show the trial court abused its discretion in excluding evidence, the appellant must demonstrate that (1) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative, and (2) the error probably caused rendition of an improper judgment in the case. *See id.*; *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 422 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also* Tex. R. App. P. 44.1(a) (discussing reversible error); *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 875 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## II. Procedural and Factual Background

### A. Champion's Motion

In its motion for summary judgment, Champion did not challenge Gonzalez's ability to prove that he is a member of a protected class for both his race and national origin, that he was qualified for the job from which he was terminated, or that he suffered an adverse employment action. Champion challenged Gonzalez's racial discrimination claim by presenting evidence, undisputed by Gonzalez, that Gonzalez was replaced by someone in his own protected class. Champion did not make a similar contention, however, as to Gonzalez's national origin claim. Regarding both claims, Champion stated that Gonzalez's termination was legitimate because of his recurring violations of safety policies.[2]

---

[2] In his Original Petition, which was the live petition at the time judgment was granted, Gonzalez did not claim that he was treated less favorably than similarly situated members of a different class (disparate treatment claim). Consequently, Champion did not address disparate treatment in its motion. When Gonzalez suggested in the give-and-take of subsequent summary judgment briefing that Champion engaged in disparate treatment, Champion asserted that he could provide no evidence of disparate treatment. Gonzalez never amended his petition to add a disparate treatment claim. Moreover, Gonzalez never provided any evidence of disparate treatment.

5

Champion contended Gonzalez could not prove that he was engaged in a protected activity or that there was a causal link between that activity and his termination as required for a prima facie showing of retaliation. Champion again offered the alleged safety violations as justification for Gonzalez's termination. Lastly, Champion alleged Gonzalez could provide no evidence of a fraudulent misrepresentation or reasonable reliance thereon as required for his fraud claim.

Attached to the motion was an affidavit from Michael Nims, the plant manager at Champion's Fresno, Texas facility where Gonzalez had worked. Nims averred that Gonzalez never made any complaints regarding race-based comments. Nims also detailed a series of safety issues, which he stated led to Gonzalez's termination. Among the reported safety violations, Gonzalez allegedly failed to use a ladder properly, put needed repair parts in his personal locker, climbed on temporary scaffolding on the outside of a storage tank rather than using a ladder, and left a mandatory safety meeting early and without permission.

## B. Gonzalez's Affidavit

The primary evidence Gonzalez presented in response to Champion's motion was his own 27-page affidavit. In the affidavit, Gonzalez averred that he is a Mexican citizen who has lived and worked in the United States since 1988 as a resident alien. After working as a temporary worker for Champion for several months in 2001, he was hired by the company as a full-time employee in the maintenance department of its Fresno, Texas chemical plant. During his employment at Champion, Gonzalez was the only Hispanic in the department. On May 19, 2008, Champion terminated Gonzalez's employment. According to Gonzalez, the safety violation allegations cited by Champion to justify his termination were mere pretext for racial and national origin discrimination and he was fired in retaliation for having previously objected to discriminatory practices at the plant.

Gonzalez details alleged persistent discriminatory behavior toward him by fellow Champion employees in the maintenance department. When Gonzalez first began

6

working at the plant in 2001, the supervisor of the maintenance department was Gary Barber, whom Gonzalez stated "ran a 'tight ship'" in which people were "openly civil" and "did as they were told." In 2002, Barber retired and was replaced as supervisor by John Tarver. According to Gonzalez, under Tarver's leadership, employees of the maintenance department felt free to call Gonzalez racial epithets and refuse to work with him. Gonzalez mentions numerous specific conflicts with fellow workers and insists that other workers were hiding and damaging his tools and taking credit for his work and that, despite complaints by Gonzalez, Tarver did nothing to stop this behavior. Gonzalez also states that one time when he asked Tarver why other members of the maintenance department enjoyed privileges that he did not, Tarver replied, "They are Americans, and you aren't. You're Mexican, and not the same as them." Nevertheless, Gonzalez consistently received satisfactory work evaluations from Tarver. In his final evaluation on February 28, 2008, Tarver rated Gonzalez as meeting expectations in safety. Tarver noted in several of the evaluations that Gonzalez had issues communicating with other workers. Gonzalez states that he attended several classes to improve his English and that he understood English better than he spoke it.

Gonzalez also specifically references three incidents in which he requested intervention by the plant manager. Twice, Gonzalez contends, he received a smaller annual raise than other employees in the department, and after appealing to the plant manager, he received higher raises. In the third incident, Gonzalez explained that he had requested and received approval for a vacation in December 2007, but Tarver informed him that he could not go on vacation because another employee had requested vacation for the same period. After Gonzalez brought the matter to the attention of the plant manager, and also complained about racist conduct he faced in the maintenance department, the plant manager intervened and permitted Gonzalez to take his approved vacation.

As mentioned above, Champion contends that Gonzalez left a May 16, 2008 safety meeting before the conclusion of the meeting, a violation of policy. Gonzalez does not

deny that he left the meeting early but contends that he was misled by Tarver into doing so. According to Gonzalez, a meeting notice for the safety meeting provided two inconsistent times, so he asked Tarver for a clarification. Tarver stated the meeting was to last until 4:00. Gonzalez avers that when the meeting recessed at 4:00, he got up to leave based on Tarver's earlier representation. When he passed Tarver, Gonzalez said, "Goodbye. I will see you on Monday," and Tarver smiled and responded, "Have a good weekend. I'll see you on Monday." Gonzalez additionally disputed Champion's characterization of the safety meeting as "important" or a "signature event."

On May 19, 2008, Tarver accompanied Gonzalez to a meeting with Eric Kiihne, the interim plant manager. At the meeting, Kiihne told Gonzalez that he was being fired because he left the safety meeting early without permission. When Gonzalez attempted to explain that he left because he understood from Tarver that the meeting was concluded, Tarver declined to support this explanation and Kiihne stated that he was not going to discuss the matter further. When Gonzalez then asked whether there were any other reasons for his termination, Kiihne said, "Yes. John [Tarver] has the rest in his folder." Thereafter, Tarver escorted Gonzalez to Gonzalez's locker and subsequently to the plant gate. Gonzalez asked Tarver why he had been fired, and according to Gonzalez, Tarver responded, "I had you fired." Tarver went on to explain that Gonzalez had "disrespected" him by going "over his head" regarding the December vacation. Tarver said he was very angry with Gonzalez for that and "[t]his is the consequence."

During numerous discussions Gonzalez had with plant managers and Tarver, Champion employee Lali Garcia acted as an interpreter. According to Gonzalez, Garcia, who worked at the central plant office, also told him about certain things that she saw and heard relating to Gonzalez's employment. In his affidavit, Gonzalez recounts in detail a number of statements Garcia allegedly told him. No affidavit or other testimony from Garcia herself appears in the record.

Gonzalez had filed a complainant against Champion with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2007. He received a "Right to Sue" letter

from the EEOC but states that he decided he did not want to sue his employer. On June 11, 2008, after his termination, Gonzalez filed a second discrimination complaint with the EEOC, alleging discrimination on the basis of race and national origin as well as retaliation for prior complaints. He again received a "Right to Sue" letter and filed the present lawsuit.

As will be discussed in detail below, Champion objected to many of the 239 paragraphs in Gonzalez's affidavit.[3] Champion grouped its objections into four basic categories: (1) time-barred allegations, (2) hearsay (including double hearsay and related objections), (3) best evidence rule, and (4) conclusory statements and statements not made with personal knowledge. The trial court sustained all of the objections. The trial court then granted Champion's motion for summary judgment.

### III. Analysis

In two issues on appeal, Gonzalez contends that the trial court erred in sustaining Champion's objections to Gonzalez's affidavit and in granting summary judgment for Champion on each of his four causes of action. We will begin by addressing one subset of Champion's objections on which there appears to be considerable confusion between the parties.[4] We will then discuss how the evidence and additional evidentiary rulings pertain to each of Gonzalez's causes of action.

### A. Time-barred Allegations

The parties talk at considerable cross-purposes regarding Champion's objection that many of the allegations of discrimination in Gonzalez's affidavit were not actionable

---

[3] Although the numbering of paragraphs in Gonzalez's affidavit only goes up to 230, it appears that nine numbers were repeated for a total of 239 paragraphs.

[4] Given the sheer volume of paragraphs in Gonzalez's affidavit (239), objections by Champion to those paragraphs (over 300), and blanket sustaining of those objections by the trial court, we will not attempt to address each specific objection as it pertains to each specific paragraph. Instead, we will only discuss the sustaining of objections as necessary to reach our required decisions in this appeal. Champion's specific objections included hearsay, double hearsay, best evidence rule, not based on personal knowledge, more prejudicial than probative, and conclusory. *See* Tex. R. Evid. 403 (more prejudicial than probative), 602 (personal knowledge), 802-804 (hearsay), and 1002 (best evidence rule).

9

because they were time barred. Champion objected on this basis to 122 paragraphs of Gonzalez's affidavit.

Before suing in state court under the TCHRA, an employee must first have exhausted his or her administrative remedies under the Act. *Czerwinski v. Univ. of Tex. Health Sci. Ctr. at Houston*, 116 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991)). Under the Act, "A complaint . . . must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Labor Code § 21.202(a). Failure to timely file an administrative complaint also prevents a employee from pursuing the complaint in court. *Czerwinski*, 116 S.W.3d at 121-22 (citing *Schroeder*, 813 S.W.2d at 485-89). Gonzalez filed his EEOC complaint on June 11, 2008; thus, any alleged discriminatory acts occurring prior to December 14, 2007 are time-barred.

Gonzalez does not dispute that any conduct occurring more than 180-days before he filed his administrative complaint not actionable in this lawsuit; however, he argues that the trial court should have not sustained Champion's time-barred allegations objection because the statements regarding earlier events were still admissible as relevant to the allegations that are not time-barred, essentially as background information for what was to follow. In its briefing to this court, Champion does not dispute the admissibility of the statements; Champion instead insists that its objections regarding time-barred claims merely requested that the trial court recognize that the claims contained therein were not actionable because they were time barred.[5] We agree with Champion's interpretation of its objections. In presenting these objections to the trial court, Champion stated the general law regarding the time period for which claims can be brought in a lawsuit (as discussed above); Champion then requested "that the [c]ourt

---

[5] Champion states on page 14 of its brief: "Champion objected only to Gonzalez's attempt to frame a discrimination and retaliation lawsuit based on allegations of discrimination that date as far back as 2004 . . . , not to the admissibility of every document or statement that pre-dates the limitations period."

sustain its objections to these allegations as time-barred."

There appears to be no real dispute here between the parties. Gonzalez does not deny that he cannot recover on claims older than 180 days before he filed his complaint, and Champion does not contend in blanket fashion that the trial court could not be informed of events occurring prior to that time. Although events occurring more than 180 days before Gonzalez filed a charge of discrimination cannot be the basis for legal redress, they are nevertheless "relevant to show the atmosphere in which those events which precipitated this lawsuit occurred." *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex. App.—El Paso 1997, writ denied) (citing Fifth Circuit cases). Accordingly, the trial court erred to the extent it sustained Champion's objections to time-barred allegations for all purposes, and we will consider these allegations to the extent they are relevant to claims that were not time-barred. We now turn to Gonzalez's arguments regarding his specific causes of action.[6]

## B. Racial Discrimination

Gonzalez does not contest Champion's assertion that he was replaced by someone from the same protected class.[7] Since Gonzalez concedes that element of his racial discrimination cause of action, the trial court did not err in granting summary judgment on that cause of action. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (explaining that a defendant is entitled to summary judgment on a cause of action if it disproves as a matter of law at least one element of the cause of action); *see also Reeves*, 530 U.S. at 142 (providing elements of prima facie case of employment discrimination).

---

[6] We will discuss all of Gonzalez's arguments under both of his issues in one unified analysis for each cause of action because ultimately both issues seek the same relief: reversal of the summary judgment because of the existence of a material issue of fact.

[7] In his response to Champion's motion for summary judgment, Gonzalez stated "[I] may have been replaced by [Champion] with a Hispanic . . . but . . . [I] was not replaced by a Mexican citizen."

11

## C. Fraud

Gonzalez does not provide any argument or authority in support of his contention that the judge erred in granting summary judgment as to his fraud claim. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

In its motion, Champion asserted that Gonzalez could present no evidence of intent or of reasonable reliance in his fraud claim. *See Italian Cowboy Partners*, 341 S.W.3d at 337 (providing required elements of common law fraud cause of action). In his brief, Gonzalez mentions that his fraud allegation is related to the safety meeting that he apparently left early after his supervisor, Tarver, allegedly told him the wrong time for the meeting to end and then did not stop Gonzalez when he left the meeting and said, "Goodbye." But Gonzalez offers only a conclusory statement that Tarver "intended to fraudulently induce" him to leave early to establish a pretext for later firing him and that Champion later ratified Tarver's fraudulent scheme by firing Gonzalez. Gonzalez also suggests, without explanation, that Tarver's statement he had Gonzalez terminated because Gonzalez reported Tarver's refusal of vacation time to the plant manager somehow creates a fact issue on fraud, thus precluding summary judgment. Gonzalez does not otherwise address the fraud elements of intent or reasonableness. Gonzalez's sparse arguments do not directly address the grounds raised by Champion.[8] Because Gonzalez does not cite to any authority and fails to develop his argument in support of this issue, we conclude that this issue is inadequately briefed and presents nothing for review. Tex. R. App. P. 38.1(i); *In re A.J.H.,* No. 14-03-01016-CV, 2004 WL 414093, at *7 (Tex. App.—Houston [14th Dist.] March 2, 2004, no pet.) ("An appellant has a duty to cite specific legal authority and to provide legal argument based upon that authority.").

---

[8] Gonzalez cites specific paragraphs of his affidavit; however, none of these paragraphs speak to a fraud claim, intent or reasonable reliance.

**D. Retaliation**

**1. Prima Facie Case**

To present a prima facie case of retaliation, Gonzalez was required to show (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action. *Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. In its motion, Champion contended Gonzalez could provide no evidence of protected activity or a causal connection.

As evidence that he engaged in a protected activity, Gonzalez stated in his affidavit that he complained to the plant manager, Michael Nims, about race-based harassment from his coworkers, his supervisor Tarver's failure to do anything about it, and Tarver's retraction of Gonzalez's pre-approved vacation so that another coworker could take a vacation.[9] Champion did not object to the paragraph of Gonzalez's affidavit wherein he discusses Tarver's retraction of vacation, but it did object on hearsay grounds to the paragraph regarding Gonzalez's purported conversation with Nims. The primary value of Gonzalez's statements to Nims, however, does not lie in the truth of the matters asserted—the harassment and Tarver's related failure to act as well as Tarver's actions regarding the vacation were covered in other portions of the affidavit[10]—the value lies in the very fact that Gonzalez made the statements to Nims. For that purpose, the statements were admissible over a hearsay objection. *See, e.g., Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). The statements were highly pertinent to a material issue in the case and were not cumulative

---

[9] Sebastian Bingley, the coworker whom Tarver allegedly allowed to take vacation instead of Gonzalez, was described (in Gonzalez's and another former coworker's affidavit) as an African-American and, thus, presumably in the summary judgment context, not an Hispanic or Mexican national.

[10] Gonzalez also testified directly about the key facts that he states he relayed to Nims in other portions of Gonzalez's affidavit. As stated in the text above, Champion did not object to Gonzalez's statements about Tarver's revocation of his vacation time. Champion also did not object to certain paragraphs wherein Gonzalez recounted specific instances of harassment by coworkers and inaction by Tarver. Although Champion did object on hearsay grounds to other descriptions of harassment in the affidavit, those descriptions also were admissible for the fact that certain derogatory comments were made, not for any supposed truth contained within those statements. *See, e.g., Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 630 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

13

of other admitted evidence; the trial court therefore erred in excluding them. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

It is not entirely clear whether Gonzalez's complaints regarding his vacation were complaints of discrimination. However, given that the employee whom Tarver initially permitted to take vacation instead of Gonzalez was apparently not in the same protected class as Gonzalez, and the considerable other evidence of discriminatory conduct in the plant maintenance department at the time of the incident, it is at least inferable that Tarver retracted Gonzalez's vacation based on Gonzalez's national origin. Furthermore, Gonzalez also testified regarding specific remarks made by Tarver that could be construed as discriminatory based on Gonzalez's national origin. For example, Gonzalez states in his affidavit that he once asked Tarver why other workers enjoyed privileges that he did not, and Tarver allegedly replied, "They are Americans, and you aren't. You're Mexican, and not the same as them." Moreover, Gonzalez's alleged complaints to Nims of harassment based on national origin were certainly complaints related to discrimination. In making such complaints, Gonzalez was engaged in a protected activity under section 21.055 of the Labor Code.

It is undisputed that Gonzalez suffered an adverse employment action when he was fired from Champion.[11] The element that Champion challenged most vociferously in the trial court was whether there was a causal connection between Gonzalez's complaints to Nims and the termination of his employment. As evidence of this connection, Gonzalez points to his affidavit testimony that, when Tarver escorted him to the plant gate on the day Gonzalez's was fired, Tarver said that Gonzalez had been fired for missing the safety meeting *and* for going over Tarver's head to Nims about the revocation of Gonzalez's vacation. *See Rachid*, 376 F.3d at 312 (discussing "mixed motive" cases). According to Gonzalez, Tarver said he had Gonzalez fired for

_____

[11] In his brief, Gonzalez mentions the possibility that he suffered an adverse employment action when Tarver tried to give him an extremely low pay raise and filed safety reports against Gonzalez. However, Gonzalez has not provided evidence of a causal link between these actions and any prior complaints as is required for a retaliation cause of action.

"disrespecting" Tarver and going over his head to Nims about the vacation.[12] This statement appears to tie Gonzalez's engagement in a protected activity directly to the subsequent adverse employment action.

Champion, however, contends that this evidence, even if believed, is insufficient to create a fact issue on causation because it was undisputed that Nims, and not Tarver, conducted the meeting at which Gonzalez was fired. While this apparent fact might carry considerable weight with a jury, it does not negate the presumption in the summary judgment context that Tarver said what Gonzalez ascribed to him and that Tarver stated the truth. Certainly, it is not outside the realm of possibility that Tarver, as head of the maintenance department, could have had as much influence over the firing of a member of that department as he claimed to have. *See, e.g., Staub v. Proctor*, 131 S. Ct. 1186, 1192-93 (2011) (rejecting suggestion that discriminatory bias must be shown for ultimate decision-maker and allowing for possibility that bias by other supervisors who influenced the decision could be a proximate cause of an adverse employment action); *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 593 (Tex. 2008) ("In determining whether the individual making the remark had authority over the employment decision, consideration is not limited to statements by the person who officially made the decision. Discriminatory animus by a person other than the decision-maker may be imputed to an employer if evidence indicates that the person in question possessed leverage or exerted influence over the decision-maker."). Thus, it appears that Gonzalez presented a prima facie case of retaliation.

## 2. Legitimate Reason and Pretext

In response to Gonzalez's prima facie case, Champion asserts that the series of safety incidents involving Gonzalez provided a legitimate, nondiscriminatory reason for his termination. *See Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. The burden therefore shifted back to Gonzalez to offer evidence that the stated reason was pretextual. *See Armendariz*, 2012 WL 2336252, at *2. Gonzalez raises several points as indicative

---

[12] Champion did not object to these statements in Gonzalez's affidavit.

of pretext, including the general atmosphere of discrimination tolerated by Tarver in the maintenance department, the lack of any apparent correction by plant management after Gonzalez complained about harassment by coworkers, Tarver's alleged statements at the gate on the day Gonzalez was fired, and the positive job performance evaluations which did not reveal significant safety issues prior to the termination.[13] One of the key safety issues offered to support Gonzalez's termination was the fact he left a mandatory safety meeting before the meeting concluded. According to Gonzalez, however, Tarver had told him an incorrect time for the end of the meeting and when Gonzalez walked by Tarver and said "Goodbye," Tarver responded "Have a good weekend. I'll see you on Monday." Although in isolation this exchange may seem innocuous, since Gonzalez was fired three days later and a primary reason was his leaving the safety meeting early, it suggests an intention to get Gonzalez fired.

All of these factors together are sufficient to raise a genuine issue of fact regarding whether the alleged safety issues were pretext for firing Gonzalez in retaliation for his complaints about discriminatory activity. Because Gonzalez presented proof of a prima facie case of retaliation and presented proof raising a fact issue concerning Champion's proffered reason for the termination, the trial court erred in granting summary judgment against Gonzalez's retaliation cause of action.

### E. National Origin Discrimination

Gonzalez has presented a prima facie case of discrimination due to his national origin. Gonzalez is a member of a protected class, he was qualified for his position, he suffered an adverse employment action, and he was not replaced in that position by anyone in the same protected class. *See Reeves*, 530 U.S. at 142. Champion does not

---

[13] Gonzalez also cites to statements Lali Garcia made to him regarding her observations of meetings about firing Gonzalez. While such evidence might be of significant weight if obtained from Garcia herself, as recounted by Gonzalez, it is inadmissible hearsay. The statements are offered for the truth of the matter she allegedly asserted, and there is no evidence she was authorized to speak for the company to Gonzalez on these matters. *See* Tex. R. Evid. 801-803; *Reid Road Mun. Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 856-57 (Tex. 2011). Champion objected to this evidence on hearsay grounds, and the trial court properly sustained that objection.

16

dispute any of these elements.

As a legitimate reason for Gonzalez's termination, Champion again pointed to and provided evidence of a series of safety issues involving Gonzalez. In his affidavit, Plant Manager Nims explained in detail why the plant's safety record was of such importance to it, particularly in attracting clients to purchase product from the plant. Champion also presented incident reports regarding certain of the safety lapses and clearly fulfilled its burden of articulating a legitimate reason for terminating Gonzalez.

The burden therefore shifted back to Gonzalez to offer evidence that the stated justification was mere pretext for discrimination based on national origin. *See id.* Again, Gonzalez points to several facts suggesting pretext, including the general atmosphere in the maintenance department, the lack of correction by management, Tarver's alleged statements at the gate on the day Gonzalez was fired, and the positive job performance evaluations which did not reveal significant safety issues prior to his termination.

When a plaintiff alleges both retaliation and discrimination based on the same adverse employment action, we do not assume that the evidence supporting one claim automatically supports the other. Above, we held that Gonzalez presented more than a scintilla of evidence to support his retaliation claims, based at least in part on the comments Tarver allegedly made at the plant gate that he had Gonzalez fired because Gonzalez went over Tarver's head regarding the retraction of vacation time in favor of another worker outside of Gonzalez's class. That alleged discussion at the gate, however, does not by itself prove a discriminatory motive behind Gonzalez's termination, as there is no evidence Tarver, or anyone else, expressly referenced Gonzalez's Mexican origin as a cause of his dismissal. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 809-811 (7th Cir. 2001) (observing that "[w]hile it is true that the claimed campaign of post-complaint harassment was apparently conducted in response to [the plaintiff's] sexual harassment complaint, . . . this does not impute a gender basis to the post-complaint harassment" and that to hold otherwise "would force us to conclude that every claim of retaliation for filing charges of discrimination would be a claim of discrimination, even thought [sic]

Title VII makes discrimination and retaliation separate wrongs" (quotation marks and citation omitted)).

There must be something more to support Gonzalez's discrimination claims than the mere fact that he was terminated after complaining about alleged discrimination. *See id.* As set forth below, Gonzalez did indeed present evidence of a discriminatory motive. By his own alleged words, Tarver played a role in the termination. Gonzalez stated in his affidavit that he once asked Tarver why other members of the maintenance department enjoyed privileges that he did not, to which Tarver replied, "They are Americans, and you aren't. You're Mexican, and not the same as them." Gonzalez also presented evidence that Tarver had undertaken other actions that treated him differently from others, including the retraction of Gonzalez's vacation in favor of another worker and twice giving Gonzalez a very small raise when other maintenance workers outside of Gonzalez's class got significantly higher raises. In each of these instances, the plant manager intervened to allow Gonzalez to take his scheduled vacation and to provide significantly higher raises. However, this evidence raises a fact issue that Tarver possessed a discriminatory animus toward Gonzalez that played a role in Gonzalez's termination. Furthermore, there was evidence that Tarver and other supervisors tolerated co-workers' harassment of Gonzalez based on his Mexican origin.

Lastly, evidence of pretext in the decision to terminate Gonzalez can be found in the satisfactory job evaluations Gonzalez received prior to the termination, including specifically on the issue of safety, as well as in the evidence that Tarver may have misled Gonzalez into leaving the safety meeting which was specifically mentioned as a reason for the termination. Because Gonzalez presented proof of a prima facie case of national origin discrimination and presented more than a scintilla of evidence that Champion's proffered reason for the termination was a mere pretext for discrimination, the trial court erred in granting summary judgment against Gonzalez's national origin discrimination cause of action.

18

## IV. Conclusion

Gonzalez failed to demonstrate the existence of a genuine issue of material fact precluding summary judgment on his race discrimination and fraud causes of action. Gonzalez, however, did establish a genuine issue of fact on his claims for retaliation and national origin discrimination. Consequently, we sustain his two issues as they pertain to his retaliation and national origin discrimination claims, reverse the summary judgment as to those causes of action, and remand the case to the trial court for further proceedings in accordance with this opinion. We affirm the judgment as it pertains to the other causes of action.

/s/        Martha Hill Jamison
           Justice


Panel consists of Justices Boyce, Christopher, and Jamison.