# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00030-CV

**Hellen Bedgood, Appellant**

**v.**

**Texas Education Agency, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-12-001595, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Hellen Bedgood appeals the trial court's order granting summary judgment in favor of the Texas Education Agency on Bedgood's claims for employment discrimination and retaliation. *See* Tex. Lab. Code §§ 21.051, .055. In her first and second issues, Bedgood contends that she established a prima facie case of both her discrimination and retaliation claims. In her third issue, Bedgood argues that the summary-judgment evidence created a fact issue as to whether the Agency had legitimate, nondiscriminatory, nonretaliatory reasons for its employment decisions. We will affirm the trial court's judgment.

### BACKGROUND

Bedgood, an African-American woman born in 1955, began working for the Agency in 2003 and was employed as the Assistant Director of the Reading First program in the Agency's Division of Curriculum in 2010. On March 30, 2010, the Agency sent Bedgood a letter informing

her that the federal government had eliminated funding for the Reading First program and that her current position would end on August 31, 2010. The two other Agency employees assigned to positions in the Reading First program, Deborah Forrester and Kathy Stewart, were also notified that their positions would end on August 31, 2010. Bedgood, Forrester, and Stewart each applied for different open positions in the Agency. Bedgood applied for the following positions: Program Specialist VII, Manager III, Program Specialist V, Program Specialist VI, and Manager IV. She was not offered employment in any of the positions for which she applied and, on August 31, 2010, Bedgood's employment with the Agency ended.

Bedgood then sued the Agency, alleging causes of action for employment discrimination and retaliation under the Texas Commission on Human Rights Act (TCHRA). *See id.* §§ 21.051, .055. Specifically, Bedgood alleged that the Agency engaged in unlawful employment practices when "she was not selected for three different positions once the funding ended for her position" and when she was "discharged" by the Agency. According to Bedgood, both the discharge from her position with the Agency and the Agency's failure to hire Bedgood for the positions for which she applied were due to the fact that she was African-American and over the age of forty. Bedgood also alleged that her termination from her position with the Agency was in retaliation for her having complained about being subjected to a hostile work environment. Bedgood also alleged that she was excluded from merit pay raises that her non-African-American colleagues received.

The Agency filed a traditional motion for summary judgment arguing that (1) Bedgood failed to make a prima facie case of discrimination because she did not establish that she was treated less favorably than similarly situated employees outside a protected class, (2) the Agency's hiring

2

decisions were based on objective criteria designed to identify the best qualified candidate and were therefore legitimate, nondiscriminatory, nonretaliatory employment practices, (3) there were legitimate business reasons for the Agency's failure to give Bedgood merit pay increases, and (4) Bedgood failed to make a prima facie case of retaliation and did not establish a causal connection between her participation in any allegedly protected activity and any employment decision. Bedgood did not file a response to the traditional motion for summary judgment, presumably relying on her response to the Agency's previously filed no-evidence motion for summary judgment. The trial court, without specifying the ground on which it relied, signed an order granting the Agency's traditional motion for summary judgment.[1] Bedgood then perfected this appeal.

## DISCUSSION

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race or age, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id.* § 21.051(1) (discrimination by employer). A prima facie case of racial discrimination requires evidence that the plaintiff (1) is a member of a protected class, (2) was qualified for the employment position at issue, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated

---

[1] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a. Accordingly, we need not repeat them for purposes of our analysis.

3

members outside the protected class. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). An employer also commits an unlawful employment practice if it retaliates or discriminates against a person who, pursuant to the TCHRA, (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code. § 21.055 (retaliation). To make a prima facie showing of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The Texas Legislature patterned the TCHRA after federal law "for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) (stating same). Thus, when analyzing a claim brought under the TCHRA, we look not only to state cases, but also to the federal statutes and the cases interpreting those statutes, to the extent the federal statute being interpreted is analogous to the Texas statute. *Toennies*, 47 S.W.3d at 476.

***Race and Age Discrimination***

In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Reeves*, 530 U.S. at 142-43; *St. Mary's Honor*

4

*Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000)). Under the burden-shifting analysis, the plaintiff has the initial burden to come forward with a prima facie case of discrimination. *Reeves*, 530 U.S. at 142; *Toennies*, 47 S.W.3d at 477. Establishment of a prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Toennies*, 47 S.W.3d at 477. The burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment decision. *Reeves*, 530 U.S. at 142; *Toennies*, 47 S.W.3d at 477. If the employer presents a legitimate reason, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination or (2) the employer's reason, while true, is only one reason, and discrimination was another, "motivating," factor. *Canchola*, 121 S.W.3d at 739; *Toennies*, 47 S.W.3d at 480; *see also* Tex. Lab. Code § 21.125(a) (providing plaintiff establishes unlawful employment practice by showing discrimination based on race, color, sex, national origin, religion, age, or disability was "motivating factor" for employment practice even if other factors also motivated employment practice unless protected class status is combined with objective job-related factors to attain diversity in employer's workforce). A plaintiff can avoid summary judgment if the evidence taken as a whole creates a fact issue as to whether the employer's stated reason was not what actually motivated the employer *and* creates a reasonable inference that discriminatory intent was a determinative factor in the adverse employment decision. *Navy v. College of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

5

*Retaliation*

Similarly, when the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory purpose for the adverse employment action. *Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. If the employer presents a legitimate reason, the plaintiff then assumes the burden to present proof that the stated reason was pretextual. *Gonzalez*, 384 S.W.3d at 466. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Unlike claims for discrimination subject to section 21.125(a) of the Texas Labor Code, which require just a "motivating factor" causation standard, retaliation claims under section 21.055 are subject to the traditional "but for" measure. *Ptomey v. Texas Tech Univ.*, 277 S.W.3d 487, 497 & n.11 (Tex. App.—Amarillo 2009, pet denied) (relying on *Pineda*, 360 F.3d at 488-89); *see University of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2533 (2013) (discussing causation requirement for retaliation claim brought under Title VII). The plaintiff must prove that she would not have suffered an adverse employment action "'but for' engaging in the protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

Bedgood's discrimination and retaliation claims were based on three of the Agency's employment decisions: (1) discharging her from her position as Assistant Director of the Reading

First program, (2) failing to hire her for any of the open Agency positions she applied for, and (3) failing to give her merit pay raises.[2] We will consider whether Bedgood carried her initial burden of making a prima facie case of discrimination and retaliation with respect to the first two of these employment decisions and, if she did, whether the evidence, taken as a whole, creates a fact issue with regard to whether the Agency's stated reasons for the complained-of employment practices were a pretext for discriminatory or retaliatory employment decisions. *See McCoy*, 492 F.3d at 557; *Navy*, 407 S.W.3d at 899.

### *Discrimination based on discharge from Assistant Director position*

It was undisputed that all three of the Agency's employees whose jobs were related to the Reading First program were informed that their positions would be eliminated as of August 31, 2010 due to lack of federal funding. Thus, to the extent Forrester and Stewart were similarly situated to Bedgood by virtue of the fact that all three of them had job functions related to the Reading First program, neither Forrester nor Stewart was treated more favorably than Bedgood. Each of them was informed that their position would be eliminated and they were all informed that they could apply for open positions within the Agency. Although Bedgood contends that only she was "discharged" because only she was not hired for a different position within the Agency, the record evidence is undisputed that Bedgood, Forrester, and Stewart all lost their Reading First positions. Because Bedgood did not carry her burden of establishing that, with regard to her discharge

---

[2] Bedgood does not argue on appeal that the trial court erred in granting summary judgment on her claim that the Agency engaged in discriminatory or retaliatory conduct with respect to merit pay raises. We do not, therefore, address the merits of the trial court's summary judgment with respect to that claim. *See* Tex. R. App. P. 38.1(f) (brief must state concisely all issues or points presented for review).

as Assistant Director of the Reading First program, she was treated less favorably than similarly situated people outside her protected class, she did not make a prima facie case of discrimination based on that employment decision.

### *Discrimination based on failure to hire Bedgood*

Bedgood argues that the trial court erred in granting summary judgment on her discrimination claim arising out of the Agency's failure to hire her for any of the open positions she applied for once she was informed that her Assistant Director position would be eliminated due to lack of federal funding. The Agency counters that Bedgood failed to establish the fourth element of her prima facie case; i.e., that she was treated less favorably than similarly situated members outside the protected class. Bedgood contends that she created a fact issue with regard to this element because she presented evidence that Forrester and Stewart were hired for different positions within the Agency and she was not. The flaw in Bedgood's argument is that, with respect to the Agency's hiring decisions, neither Forrester nor Stewart was "similarly situated" to Bedgood. Forrester was hired to fill an Administrative Assistant IV position that Bedgood did not apply for despite the fact that she was qualified for that position. Stewart was hired to fill a Manager IV position that Bedgood testified she did not apply for because she was not qualified. It is undisputed that neither Forrester nor Stewart applied for any of the positions that Bedgood applied for. It is also undisputed that Bedgood did not apply for any of the positions that Forrester or Stewart applied for. Thus, evidence that Forrester and Stewart were hired for different positions that they, and not Bedgood, applied for, does not constitute evidence that, with respect to any specific hiring decision, the Agency treated Bedgood less favorably than any similarly situated person outside the protected class.

8

Even if more general circumstances—i.e., that Forrester and Stewart were successful at obtaining other employment within the Agency while Bedgood was not—could be considered to create a presumption of discriminatory intent, the Agency presented evidence of its legitimate, non-discriminatory reasons for not hiring Bedgood. The Agency's hiring procedures are set forth in a document titled "OP 07-23, Personnel Actions." The procedures require that the Agency base employee selection on specific job-related criteria that are used to identify the most qualified applicant for a particular job.

Bedgood applied for a Program Specialist VII position. The Agency presented evidence that it did not interview Bedgood for the Program Specialist VII position because there were more qualified candidates in the applicant pool whose total scores on the Agency's interview scoring matrix were higher than Bedgood's and who had the preferred qualification of certification in technology applications education. All of the candidates who were selected for interviews for that position held a certification in technology applications education, whereas Bedgood did not.

Bedgood applied for a Manager III position in the Division of Student Assessment. The primary function of the Manager III position was to perform complex managerial work overseeing activities related to maintaining the security and confidentiality of statewide student assessments. Bedgood was not interviewed for the Manager III position because applicants were selected based on the number of points scored on the job screening matrix used by the Agency, which assigned points based on the degree to which each applicant met a number of job criteria. Applicants scoring 50 points or higher on the interview matrix were interviewed. Bedgood scored 40 points on the matrix and thus was not interviewed for that position. The person hired for that position had extensive knowledge of the program and related hands-on experience that Bedgood did not.

Bedgood applied for a Program Specialist V position in the Division of IDEA Coordination. That position served as the coordinator of preschool services for students with disabilities. The preferred qualifications for the position included experience working with students with disabilities and preschool students, along with knowledge of state and federal laws related to special education and preschool programs for students with disabilities. Although Bedgood met the minimum requirements for being interviewed for the position, she did not meet the preferred qualifications. The person hired for that position had extensive experience working in special education, which Bedgood did not.

Bedgood applied for a Program Specialist VI position in the Division of School Readiness and Partnerships. This position performed advanced consulting services and provided technical assistance and oversight related to the Early Childhood School Readiness Integration and Limited English Proficient (LEP) Student Success Initiative. Preferred qualifications for the position included experience managing programs related to school readiness or LEP initiative and experience working with at-risk and diverse student populations. Interviews were granted to applicants based on their score on a hiring matrix that awarded points based on the degree to which the applicant met the hiring criteria. The three highest scoring applicants, with scores of 80, 85, and 90, were interviewed. Bedgood was not interviewed for the position because her score of 60 was below the scores of the applicants interviewed. The Agency hired a person with experience related to the programs the position would administer.

Bedgood applied for a Manager IV position in the Division of Discretionary Grants. The position served as the lead grant manager and involved advanced managerial work and oversight

of the Agency's grant programs. Interviews were granted to applicants based on their scores on an interview screening matrix that assigned points to candidates based on the degree to which they met the hiring criteria. The cutoff for an interview was a minimum of 35 points. Bedgood was not selected for an interview because her score of 23 points was below the cutoff. The person hired for the position had extensive knowledge and experience in the area of grant administration and management.

Bedgood's evidence, consisting of her deposition testimony, challenges the legitimacy of these hiring decisions on the ground that, in her view, she was qualified for the positions she applied for. But "merely disputing [the employer's] assessment of [the employee's] qualifications will not create an issue of fact" regarding discriminatory intent. *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 440 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("The evidence of relative qualifications must be more than merely subjective and speculative. It must be specific and comparative in nature."). Employment discrimination laws "were not intended to be vehicles for judicial second-guessing of employment decisions nor intended to transform courts into personnel managers." *Texas Instruments*, 183 S.W.3d at 555-56 (citing *Jaso v. Travis Cnty. Juvenile Bd.*, 6 S.W.3d 324, 332 (Tex. App.—Austin 1999, no pet.)).

Finally, Bedgood asserts that Forrester and Stewart were treated more favorably than she was because they were given assistance that facilitated their transition into new jobs whereas Bedgood was not. Bedgood relies on her own deposition testimony that Stewart and Forrester were treated differently from her. Specifically, she testified that Forrester and Stewart were "given jobs for which they did not have to compete." Bedgood also testified that Stewart was given

11

work assignments related to her new job before she was actually hired and that Forrester was moved to a new location in the office before she was hired for her new job. These conclusory allegations and subjective beliefs are not sufficient to rebut the nondiscriminatory reasons articulated by the Agency for not hiring Bedgood for any of the positions she applied for. *See Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 425 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (summary judgment for defendant is proper in discrimination case when plaintiff's evidence amounts to no more than conclusory allegations, improbable inferences, speculation, or subjective beliefs and feelings). To avoid summary judgment, the body of proof must be more than a mere scintilla. *Ptomey*, 277 S.W.3d at 487. Moreover, the record contains evidence that both Forrester and Stewart applied for, and were qualified for, the posted positions each was hired to fill. In any event, evidence tending to show that Forrester and Stewart were given more assistance in finding new positions within the Agency than was Bedgood, standing alone, would not support a claim of discrimination under the TCHRA. For purposes of discrimination, the TCHRA only addresses ultimate employment decisions; it does not address every decision made by an employer that arguably might have some tangential effect on employment decisions. *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The Agency's decision to relocate Forrester to a new location in the office or give Stewart work assignments related to a job she later applied for do not constitute ultimate employment decisions actionable under the TCHRA. We hold that the trial court did not err in granting the Agency's motion for summary judgment on Bedgood's claim of age and race discrimination.

***Retaliation for engaging in protected activity***

The Agency argues that summary judgment in its favor on Bedgood's retaliation claim was proper because she failed to meet the requirement that she present proof of a causal link between any protected activity she engaged in and the complained-of employment practices. Because, as set forth above, the Agency articulated legitimate, nonretaliatory reasons for both the elimination of Bedgood's position as Assistant Director of the Reading First program and its decisions not to hire her for any of the positions she applied for, Bedgood was required to present evidence that those reasons were false and the real reason for the Agency's employment decisions was retaliatory. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. The proper causation standard for retaliation claims under section 21.055 is the traditional "but for" measure. Thus, Bedgood was required to present evidence that the Agency's employment decisions would not have been taken but for her having engaged in protected activity.

As evidence that she engaged in protected activity Bedgood relies on her testimony that she complained to Todd Webster, Chief of Staff, in a June 2010 staff meeting about the loss of funding for the Reading First program and, as a result, Monica Martinez, Managing Director of the Agency's Curriculum Division, was "put on the spot" during the meeting and consequently later retaliated against Bedgood when making hiring decisions, specifically for the Program Specialist VII position. Bedgood also testified that she complained to Tom Shindell, an Organizational Development Director, that she believed she had been exposed to a hostile work environment. Bedgood argues that her summary-judgment evidence created a fact issue regarding whether the reason she was not hired for any of the positions to which she applied was to retaliate against her for making

13

those complaints. The evidence Bedgood presented to support her contention that, but for those activities, she would have been hired amounts to no more than conclusory allegations, speculation, and subjective belief. Bedgood did not present sufficient evidence of retaliatory motive for the Agency's employment decisions to rebut the Agency's stated legitimate, nonretaliatory reasons for its employment decisions. Having reviewed the summary-judgment evidence, we conclude that Bedgood's proof of unlawful retaliation for her complaints regarding the program funding or a hostile work environment rises no higher than speculation, personal belief, and insupportable inferences. This is not sufficient to avoid summary judgment on her retaliation claim. *See Ptomey*, 277 S.W.3d at 497.

## CONCLUSION

Having concluded that the trial court did not err in granting the Agency's motion for summary judgment, we overrule Bedgood's three appellate issues and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: February 19, 2015

14