ACCEPTED
01-15-00090-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/4/2015 2:52:14 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00090-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/4/2015 2:52:14 PM
CHRISTOPHER A. PRINE
Clerk

VICKY McKENNA
Appellant,

v.

BAYLOR COLLEGE OF MEDICINE
Appellee.

On Appeal from the 11th Judicial District Court
Harris County, Texas
Trial Court No. 2012-74884

BRIEF OF APPELLANT

VICKY McKENNA

GLENN W. PATTERSON, JR.
SBN 15612500
11 Greenway Plaza, Suite 2820
Houston, Texas 77046
713-961-1200
713-961-0941 (Facsimile)

ATTORNEY FOR APPELLANT

PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | **Appellant's Counsel:** |
| Vicky McKenna | Glenn W. Patterson, Jr.<br>Attorney at Law<br>11 Greenway Plaza<br>Suite 2820<br>Houston, Texas 77046 |
| **Appellees:** | **Appellee's Counsel:** |
| Baylor College of Medicine | Shauna Johnson Clark<br>Attorney at Law<br>1301 McKinney<br>Suite 5100<br>Houston, Texas 77010-3095 |

# TABLE OF CONTENTS

PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

BRIEF OF APPELLANT VICKY MCKENNA . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . x

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ISSUE ONE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON McKENNA'S RACE AND AGE CLAIM.

A.  MCKENNA ESTABLISHED A PRIMA FACIE CASE ON HER CLAIMS OF RACE AND AGE.

B.  THE ARTICULATED LEGITIMATE REASON FOR DISCHARGE WAS PRETEXTUAL.

C.  McKENNA WAS TREATED DIFFERENTLY THAN OTHER SIMILARLY SITUATED EMPLOYEES.. . . . . . . . . . . . . 14

ISSUE TWO

        THE TRIAL COURT ERRED IN GRANTING SUMMARY
        JUDGMENT ON MCKENNA'S LIBEL CLAIM.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        A.    McKENNA ESTABLISHED A PRIMA FACIE CASE OF
               LIBEL.

        B.    MCKENNA'S AMENDED PLEADING IS NOT SUBJECT TO
               A PLEA OF LIMITATION BECAUSE OF APPLICATION OF
               THE RELATION BACK DOCTRINE.

        C.    BAYLOR FAILED IN ITS BURDEN TO ESTABLISH A
               QUALIFIED PRIVILEGE

        D.    BAYLOR FAILED TO SHOW THE LIBELOUS STATEMENT
               WAS MADE WITH MALICE.

        ISSUE THREE

        THE TRIAL COURT ERRED BY GRANTING
        SUMMARY JUDGMENT ON APPELLANT'S BREACH
        OF CONTRACT CLAIM BECAUSE THERE WAS
        ADEQUATE CONSIDERATION AND GENUINE
        ISSUES OF MATERIAL FACT EXIST FOR THE
        FINDER OF FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# INDEX OF AUTHORITIES

**Page**

*FM Props. Operating Co. v. City of Austin*, 22 S.W. 3d 868, 872 (Tex. 2000) . 14

*Rhone-Poulenc, Inc. v. Steel*, 997 S.W. 2d 217, 223 (Tex. 1999) . . . . . . . . . . . 14

*Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W. 3d 915, 917 (Tex. 2005) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Austin v. Inet Techs., Inc.*, 118 S.W. 2d 491, 496 (Tex. App. -- Dallas 2003, no pet. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . )32

*Buxani v. Nussbaum*, 940 S.W. 2d 350, 352 (Tex. App. – San Antonio 1997, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*City of Houston v. First City*, 827 S.W. 2d 462, 473 (Tex. App. – Houston [1st Dist.] 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Crest Const., Inc. v. Murray*, 888 S.W. 2d 931, 942 (Tex. App. – Beaumont 1994), reversed on other grounds, 900 S.W. 2d 342 (Tex. 1995) . . . . . . . . . . . . . . . . 35

*Davin v. Delta Air Lines, Inc.*, 678 F. 2d 567, 570 (5th Cir. 982)) . . . . . . . . . . . 19

*Estate of Townes v. Townes*, 867 S.W. 2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Ex parte Goad*, 690 S.W. 2d 894, 896 (Tex. 1985), cert. denied, 493 U.S. 1021, (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*E–Z Mart Stores, Inc. v. Hale*, 883 S.W. 2d 695, 699 (Tex. App. – Texarkana 1994, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Gonzalez v. Champion Techs., Inc.*, 384 S.W. 3d 462, 466 (Tex. App.-Houston [14th Dist.] 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Goodman v. Gallerano*, 695 S.W. 2d 286, 287–88 (Tex. App. – Dallas 1985, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Haase v. Glazner*, 62 S.W. 3d 795, 797 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . 14

*Hallmark v. Hand*, 885 S.W. 2d 471, 477 (Tex. App. – El Paso 1994, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

*Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W. 2d at 348 . . . . . . . . . . . . . 34, 36

*Jackson v. Cheatwood*, 445 S.W. 2d 513, 514 (Tex. 1969) . . . . . . . . . . . . . . . . . 32

*Jackson v. Cheatwood*, 445 S.W. 2d 513, 514 (Tex. 1969) . . . . . . . . . . . . . . 25, 27

*Knesek v. Witte*, 754 S.W. 2d 814, 816 (Tex. App. – Houston [1st Dist.] 1988, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lexington Ins. Co. v. Daybreak Exp., Inc.*, 393 S.W. 3d 242, 245 (Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W. 2d 473, 477 (Tex. App. – El Paso 1993, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11, (1976) . . . . 18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Moore v. N.Y. Cotton Exch.*, 1270 U.S. 593, 610 (1926) . . . . . . . . . . . . . . . . . . 29

*Navy v. Coll. of the Mainland*, 407 S.W. 3d 893, 898-99 (Tex. App.—Houston [14th Dist.] 2013, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pelt v. American Casualty Co.*, 513 S.W. 2d 128, 129-30 (Tex. Civ. App. – Dallas 1974, writ ref'd n.r.e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Providence Hosp. v. Truly*, 611 S.W. 2d 127, 133-34 (Tex. Civ. App. – Waco 1980, writ dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Quantum Chem. Corp.*, 47 S.W. 3d at 474. . . . . . . . . . . . . . . . . . . . . . . . 16

*Rachid v. Jack in the Box, Inc.*, 376 F. 3d 305, 312 (5th Cir. 2004) . . . . . . . . . . 16

*Randall's Food Markets, Inc. v. Johnson*, 891 S.W. 2d 640, 646 (Tex. 1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,27,32,33

*Reeves v. Sanderson Plumbing Prods., Inc.* . . . . . . . . . . . . . . . . . . . . . 15, 16

*Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W. 2d 492, 496 (Tex. 1991) . . . . . . . 35

*San Antonio Credit Union v. O'Connor*, 115 S.W. 3d 82, 99 (Tex. App. -- San Antonio 2003, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Smith v. Renz*, 840 S.W. 2d 702, 704 (Tex. App. – Corpus Christi 1992, writ den.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 35, 36

*Solomon v. Greenblatt*, 812 S.W. 2d 7, 15 (Tex. App. – Dallas 1991, no writ) . . 35

*Southwestern Elec. Power Co. v. Grant*, 73 S.W. 3d 211, 215 (Tex. 2002) . . . . 14

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W. 3d 563 (Tex. App---- Austin 2007 pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 28

*Waddill v. Phi Gamma Delta Fraternity*, 114 S.W. 3d 136, 144 (Tex. App.-Austin 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*WFAA-TV, Inc. v. McLemore*, 978 S.W. 2d 568, 571 (Tex. 1998) . . . . . . . . . . . 24

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . 29

6 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure Section 1497 (34d ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 29

section 21.001 (1) of the Texas Labor Code . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 29

Tex. Civ. Prac. & Rem. Code Ann. § 16.068. . . . . . . . . . . . . . . . . . . . . . . . 28

Tex. Lab. Code § 21.051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

No. 01-15-00090-CV


IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON


VICKY McKENNA
Appellant,


v.


BAYLOR COLLEGE OF MEDICINE
Appellee.


On Appeal from the 11th Judicial District Court
Harris County, Texas
Trial Court No. 2012-74884


BRIEF OF APPELLANT VICKY MCKENNA

TO THE HONORABLE COURT OF APPEALS FOR THE FIRST SUPREME
JUDICIAL DISTRICT:

Appellant Vicky McKenna ("McKenna" or "Plaintiff"), respectfully submits

this brief in support of her request that the Court of Appeals reverse the district

court's granting of summary judgment and reverse and remand this case to the trial

court for all purposes.

## STATEMENT OF THE CASE

This case was filed in District Court by Vicki McKenna "McKenna" on December 20, 2012. (CR 4) for damages arising out of her termination as a member of the Baylor College of Medicine faculty. ("Baylor"). Baylor filed a motion for summary judgment on October 6, 2014, (Cr.71), and McKenna filed her response in opposition to the motion on November 3, 2014. (CR. 252). The trial court granted interlocutory summary judgment on November 20, 2014. (CR. 488).

Appellant and Appellee entered into a Rule 11 Agreement filed with the court on December 18, 2014. (Appendix). Therefore, pursuant to the Rule 11 Agreement, Appellant dismissed her only remaining claim in the trial court without prejudice (Appendix) and thereafter filed her Notice of Appeal on January 22, 2015. (CR. 511).

McKenna requests that this Court reverse the order of the trial court granting summary judgment, and remand the case for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument.

## ISSUES PRESENTED

### ISSUE ONE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON McKENNA'S RACE AND AGE CLAIM.

A.    MCKENNA ESTABLISHED A PRIMA FACIE CASE ON HER CLAIMS OF RACE AND AGE.

B.    THE ARTICULATED LEGITIMATE REASON FOR DISCHARGE WAS PRETEXTUAL.

C.    McKENNA WAS TREATED DIFFERENTLY THAN OTHER SIMILARLY SITUATED EMPLOYEES.

### ISSUE TWO

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCKENNA'S LIBEL CLAIM.

A.    McKENNA ESTABLISHED A PRIMA FACIE CASE OF LIBEL.

B.    MCKENNA'S AMENDED PLEADING IS NOT SUBJECT TO A PLEA OF LIMITATION BECAUSE OF APPLICATION OF THE RELATION BACK DOCTRINE.

C.    BAYLOR FAILED IN ITS BURDEN TO ESTABLISH A QUALIFIED PRIVILEGE

D.    BAYLOR FAILED TO SHOW THE LIBELOUS STATEMENT WAS MADE WITH MALICE.

## ISSUE THREE

THE TRIAL COURT ERRED IN GRANTING
SUMMARY JUDGMENT ON MCKENNA'S BREACH
OF CONTRACT CLAIM BECAUSE THERE WAS
ADEQUATE CONSIDERATION AND GENUINE
ISSUES OF MATERIAL FACT EXIST FOR THE
FINDER OF FACT.

## STATEMENT OF FACTS

Vicky McKenna ("McKenna") worked at Ben Taub General Hospital as a staff nurse prior to Baylor College of Medicine's ("Baylor") contracting to become the provider for mid-level services at Ben Taub Emergency Department. McKenna never received a reprimand or write-up during her many years at Ben Taub Hospital. McKenna worked for Harris County Hospital District from 1991 to 2000 as a nurse and left in 2000. She returned to Harris County Hospital District in 2006 and worked as a nurse practitioner in Ben Taub's emergency room until 2008 when she began working part-time for Baylor (CR. 293).

Baylor became the provider of Emergency Services at Ben Taub in 2008. Employees of Harris County Hospital District were required to submit a new application with Baylor if they wanted to continue working at Ben Taub. (CR 118). McKenna applied for the position of nurse practitioner 2, and was hired for the position in the fall of 2008 and was terminated on October 31, 2011. *Id.* McKenna began working full-time for Baylor in 2009 as a nurse practitioner and was assigned to the emergency room at Ben Taub. (CR 119). McKenna's responsibility was to assess and treat patients. She worked 12 hour shifts that varied depending on the shift to which she was assigned. (CR. 50). Angela Fisher ("Fisher") was hired by Baylor in November 2008. Fisher is a white female who at time of hiring was less than 40 years of age. (CR 485). Mid-level providers ("MLPs") began reporting to Fisher

beginning sometime in 2009 when Fisher became medical director. Fisher supervised all faculty, which included both physicians and mid-level providers.

Soon after being hired, Baylor reclassified McKenna as a mid-level provider. When McKenna was terminated on October 31, 2011, Baylor employed 11 or 12 full-time mid-level providers. McKenna was the only white female MLP and the only MLP over forty years of age, except for Trent Renfrow, a male Caucasian also stated for termination. (CR.369, 276, 481). Mid-level providers were considered to be faculty by Baylor. Patricia Harris, a black female 36 years of age, was the supervisor of the mid-level providers during McKenna's employment with Baylor. (CR.297). In September 2011, Baylor had twelve mid-level providers. (CR.450).[1]

In 2011, Baylor assigned a supervising physician to each of the MLPs for the purpose of reviewing charts on patients created by MLPs. (CR.298-299). Chart reviews were monthly meetings with the physician faculty to address any quality or

---

[1]Harris reviewed the list of active and withdrawn employees, and confirms that on chart (CR.369) Georgia Gibson was a moonlighter who found work elsewhere; McKenna was terminated; Sabrina Hurr took a job with the VA; Martha Dickson chose to work closer to home; Manny Vasquez chose to leave because of harassment. Mark Shepherd was a fellow who was not hired Athena Baldwin was a moonlighter. Leah Bayliss got a job at Texas Children's Hospital. Jennifer Cu got married and moved out of state; Elda Ramirez did not work enough hours. Heather Weeden was a moonlighter and did not meet the hourly requirements for shifts. Fisher states that Heather Weeden never worked a shift and Leah Bayliss and Athena Baldwin never worked a shift. (CR.369).

2

productivity issue of an MLP. (CR.434). Initially, McKenna's supervising physician, Dr. Cassidy, had difficulty making time to meet with her to review and evaluate charts. *Id.* McKenna advised Harris that she could not get Cassidy to meet with her so that she could get her charts evaluated. (CR.298, 299).

Harris testified that in early 2011 Fisher told her that she wanted to fire McKenna and told her to start writing up McKenna for something. McKenna had received excellent reviews in her previous two years. (CR. 486). Harris believes that Fisher should be removed from her position and also believes that Fisher discriminates against some of the mid-level providers. (CR. 454).

Fisher made "old age" references on multiple occasions to McKenna about McKenna being older than the rest of the MLPs and commented that she didn't think McKenna fit in. Specifically, Fisher said that McKenna was "old school." Fisher stated again in the termination meeting that McKenna did not fit in. (CR. 341-342). McKenna was singled out by Harris and Fisher. She was the oldest MLP and was treated differently than the other MLPs. (CR. 314). Harris states that Fisher preferred to hire PA fellows. (CR.462). The only fellows at Baylor when McKenna was fired were Kaye-Ann Christie (black female, born 6/9/86) and Mark Shepherd (white male, born 8/3/82).

3

Harris believes Fisher should be removed from her position. (CR.281). Fisher discriminated against some of the MLP's.

McKenna was given a written reprimand in a meeting with Fisher and Harris on June 21, 2011. She was told she was being written up for low productivity because her chart reviews were delinquent and because she was not seeing two or more patients per hour. (CR.305). After the meeting, McKenna asked the other mid-level providers how many patients they were seeing an hour and whether they were meeting the two patient per hour goal. No one was meeting the goal of seeing two patients per hour. No other MLP she spoke to was written up. (CR.315). Other MLPs were treated better than McKenna as they were not written up for not meeting the throughput of two patients per hour. *Id.* Certainly none were fired, except for McKenna.

McKenna was told by Harris that as punishment for having delinquent chart reviews, she was required to work an extra 12-hour shift without pay, which she did. (CR.304-305). Although Christie worked one extra 12-hour shift per month during 2012, she was paid for her overtime. (CR.406). Christie does not know of any mid-level provider who was required to work an extra shift and was not paid. *Id.*

By the beginning of July 2011, less than 10 days after the June meeting, McKenna's chart reviews were current. By that time she had met with her new

4

supervising physician Dr. Carnell, who approved McKenna's charts. McKenna was not delinquent again in having her charts reviewed. (CR.304).

Harris acknowledged that no MLPs met the goal of treating two patients per hour during the nine month period from April through December of 2011. There was one exception, as one of 12 met the goal in September. (CR.446-451).

On July 14, 2011 McKenna met with Harris and Fisher for her performance review. McKenna had received two previous yearly performance reviews and the reviews had been excellent. This time, she was handed another write-up. (CR.196). McKenna was placed on 30 day probation with a review of her productivity in 30 days. *Id.* At the time of this meeting, McKenna's chart reviews were current and she was attending all required meetings. (CR.485). Her only deficiency was not meeting the goal of seeing two patients an hour. (CR.196). Since June, McKenna had seen more patients per hour, but not consistently two patients per hour (CR.485). After 30 days, there was no follow-up meeting to discuss her productivity nor was she terminated at the end of the probationary period. *Id.*

When McKenna was terminated on October 31, 2011, the meeting was attended by Fisher, Harris, Letha Smith and Judy Garey. (CR.308). McKenna was promised that she would be paid an additional 30 days of salary and benefits to permit her to attempt to obtain employment within Baylor in another department. (CR.485).

5

In consideration for the extra salary to be paid by Baylor, McKenna had to agree not to come on the premises or speak with her fellow MLPs. *Id.* She told Harris and Fisher that she agreed to that condition. *Id*

McKenna never turned in disorganized sign-out reports. Further, McKenna denies that Fisher complained that she had not signed out a critical patient and denies that this event ever took place. (Cr.308, 309). McKenna denies drinking water in a patient area or using inappropriate language. (CR.310). After the meeting with Fisher, McKenna spoke with Harris and informed her that Fisher was incorrect about the occurrence of these alleged incidents. (CR.310-311). Fisher confirms that McKenna advised her that she had moved the patient to the shock room because the patient was combative and that the patient was very angry and uncooperative when she first interacted with her. (CR.327). McKenna did not violate policy regarding drinking liquids in the patient area. (CR.328). Fisher complained that McKenna had moved a patient without orders, however, a patient may be moved to a different care area with only a verbal order to a nurse by an MLP. (CR.328). There is no sign-out form for moving a patient and it is usually done by verbal order. (CR.329).

Harris observed McKenna performing her job on almost a daily basis and never observed any unprofessional performance on McKenna's part. (CR.453-454). Kaye-Ann Christie never witnessed McKenna becoming angry while she was

6

working or do anything that could be considered unprofessional. Christie does not know of any mid-level provider that did not get along with McKenna or who had complaints about her professionalism or productivity.

At the conclusion of the termination hearing on October 31, 2011, McKenna was escorted by a security officer to the mid-level provider's office to retrieve her purse and books. She then left the hospital on her own. McKenna's notice of termination stated that she had 30 days to find other employment within Baylor. (Friend, p.30).

Baylor changed its reason for Plaintiff's discharge from performance to misconduct and then some six months later changed its official reason back to performance. (CR.198, 231-232, and 424).

After she was terminated, McKenna applied for many positions from November 2011 through March 2013. It was very difficult for McKenna to find a job due to the fact that Baylor told her that it had changed the reason for her termination after she had been fired. (CR.317). She applied multiple places but never received a call back as a nurse. *Id.* McKenna told employers with which she applied that she had been fired for misconduct. *Id.* None of those potential employers offered her a position. (CR.486).

7

Harris liked Kaye-Ann Christie, a black female, born 6/9/86 and recruited her to be a fellow. (CR.455). Christie was the first mid-level provider hired after McKenna was terminated as a mid-level provider (CR.463). Harris admits that Baylor wanted to hire Kaye-Ann Christie as a mid-level provider, but at the time there were no positions available (before McKenna was terminated). (CR.458). Christie could not be hired as a full-time MLP unless another position became available, or a new additional position was approved by Baylor. (CR.457).

Harris recommended that Baylor extend Christie's fellowship because Baylor had to either extend her fellowship, get approval for another position, or risk losing her to a new employer. (CR.459). Christie was the only fellow whose fellowship was extended. After her one year at Baylor, her fellowship was completed. Baylor was in the process of getting new fellows. Christie was looking for a job but reached a verbal agreement with Baylor to extend her fellowship for two months. *Id.*

As far as Harris knows, no one else was interviewed for McKenna's position besides Christie. (CR.461). There were no ads placed for a mid-level provider position after McKenna was terminated. (CR.463). Harris confirms sending an e-mail to Fisher to interview more people for the mid-level provider position before hiring Christie because, for one reason, it was a very sensitive time. (CR.469)

8

Mark Shepherd, (white male, born 8/3/82), was also a fellow at Baylor at the same time as Christie, but Baylor never offered him a position. (CR.462).

Dane Friend is Vice President of Human Resources and associate general counsel for Baylor College of Medicine. (CR.424). Friend mainly deals with employment law. Baylor's employee relations team that assisted Friend consisted of Judy Garey, Sandy Dunn and Paula Hebert.

Because McKenna was a member of the Baylor faculty, her termination had to be approved by Friend or bumped up the chain of command for somebody to approve it. (CR.382). The determination to change the reason for McKenna's discharge from "performance" to "misconduct" was made later in the day of her termination on October 31, 2011, or the next day. (CR.383). Friend consulted by phone with Garey as to whether the reason for discharge could be changed. Further discussion ensured later in a face to face meeting between Friend, Garey, and an employee relations advisor. *Id.* Friend authorized the change to misconduct the afternoon after McKenna had been fired for performance or perhaps the next day. (CR.383). Friend's understanding was that McKenna had been initially told she was being let go for performance issues and would have 30 days to find another position within Baylor. *Id.*

9

Friend, as part of his duties as associate general counsel for Baylor, typically handles matters with charges of discrimination against Baylor. (CR.385). Friend was tasked to file Baylor's response to the charge of discrimination to the EEOC. *Id.*

Friend sent Baylor's position statement by letter dated May 25, 2012 to the EEOC. *Id.* Friend advised that Baylor had terminated McKenna solely for performance. (CR.386, 424). Friend states his letter to the EEOC was correct. (CR.385). Friend testified in his deposition that McKenna was terminated for misconduct on October 31, 2011. The letter of November 11, 2011 sent to McKenna by Garey of Baylor asserts that McKenna was terminated for misconduct. (CR.386, 421). Friend could not explain why he changed the reason for McKenna's discharge to misconduct in Baylor's official position statement of May 25, 2012 to the EEOC. *Id.* (CR.424).

McKenna and Shauna Robertson told Harris that Fisher had inappropriately billed for histories and physicals on patients that were not completely documented and that Fisher coded and billed for it, even though there was not adequate documentation to bill Medicare or insurance. (CR.261). Harris confirmed these reports by reviewing the patient charts that were not adequately documented regarding history and physical exam by Fisher.

10

## SUMMARY OF ARGUMENT

The trial court erred in granting summary judgment on McKenna's race and age claim. McKenna made a prima facie case of both age and race. McKenna was over the age of 40 and was the only white female MLP. She was terminated on October 31, 2011 and quickly replaced by Kaye-Ann Christie, a black female born 6/9/86. Mckenna was first told she was fired for performance failing to meet the goal to see two patients an hour. It is true she did not meet this goal for MLPs. McKenna was treated differently than other MLPs in terms of discipline for not meeting the goal. None of the other MLPs met this requirement from April through December of 2011 except one person in one month yet no one else was terminated for not meeting the requirement.

The court erred in granting summary judgment on McKenna's libel claim. The relation back doctrine applies to save the claim from a plea of limitation. McKenna's amended pleading asserting the claim of libel was not based on an entirely new, distinct, or different transaction or occurrence. The new pleading met the requirements of the Civil Practice & Remedies Code Section 16.068.

Baylor failed to establish facts which would entitle them to be able to claim a qualified privilege to send an email informing all MLPs and numerous doctors that McKenna was fired for "Misconduct." Baylor fired McKenna for performance and

11

could not re-ring the bell to fire her for misconduct. To establish a qualified privilege, Baylor was required to prove the email and subsequent communications with the Texas Workforce Commission were not sent with malice. Baylor failed to meet its burden to do so.

Baylor was upset with the actions of Plaintiff after she left the termination meeting. Garey, the Human Resources representative in the meeting, contacted Dane Friend, the Vice President for Human Resources who agreed to change the reason for McKenna's termination from performance to misconduct. Plaintiff had already been fired for performance hours before and had traveled home. Her objectionable conduct came after she was fired. Even if the conduct was offensive, which McKenna disputes, it could not constitute the reason plaintiff was discharged, for her termination had already occurred on the basis of her alleged lack of performance.

Baylor sent a letter on November 2, 2011 to McKenna advising her that she had been dismissed for misconduct. As a consequence, Plaintiff advised potential employers that she had been told she was fired for misconduct and was not eligible for rehire. Such action by McKenna constitutes self-defamation. Thereafter, McKenna filed a charge of discrimination with the EEOC on the basis of race and age. Dane K. Friend J.D. was an Assistant Vice President, Chief Human Resources Officer and Associate General Counsel for Baylor. Friend, on behalf of Baylor filed

12

the response to the charge. In the response Friend advised the EEOC investigator that the only reason for McKenna's discharge was performance (not misconduct). Baylor failed to inform McKenna that Baylor had again changed the reason for her termination, this time changing the reason back to performance from misconduct. Friend could not explain why he had done so.

The trial court erred in granting summary judgment on McKenna's breach of contract claim. Plaintiff, at her termination meeting on October 31, 2011, was told that she would be paid her full salary and benefits for the next thirty days and would have the opportunity to obtain a job in another department within Baylor if, in consideration therefore, McKenna would agree not to come back on Baylor premises during the thirty days, and not to converse with any of her fellow MLPs on site. A promise for a promise creates adequate consideration. The issue of meeting of the minds, assent and to the terms of the contract are questions of fact for the fact finder.

# LEGAL ARGUMENT

## ISSUE ONE

## THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCKENNA'S RACE AND AGE CLAIM.

    **A.    MCKENNA ESTABLISHED A PRIMA FACIE CASE ON HER CLAIMS OF AGE AND RACE; AND**

    **B.    THE ARTICULATED LEGITIMATE REASON FOR HER DISCHARGE WAS PRETEXTUAL.**

    **C.    MCKENNA WAS TREATED DIFFERENTLY THAN OTHER SIMILARLY SITUATED EMPLOYEES.**

**Standard of Review**

An appellate court reviews the trial court's summary judgment de novo. See *FM Props. Operating Co. v. City of Austin*, 22 S.W. 3d 868, 872 (Tex. 2000). When reviewing a summary judgment, the court takes as true all evidence favorable to the nonmovant, and indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W. 3d 211, 215 (Tex. 2002). Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Haase v. Glazner*, 62 S.W. 3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W. 2d 217, 223 (Tex. 1999).

14

**A. McKenna Established A Prima Facie Case on her Claims of Age and Race.**

In resolving disparate-treatment cases, courts utilize a system of "burden shifting" in which the burden of production shifts from the plaintiff to the defendant and then back to the plaintiff. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In employment-discrimination cases based on circumstantial evidence, the plaintiff's prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination. *Russo v. Smith Intern., Inc.*, 93 S.W. 3d 428, 435 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). A prima facie case of racial discrimination requires proof that the plaintiff (1) is a member of a protected class, (2) was qualified for the employment position at issue, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated members outside of the protected class. *See Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W. 3d 915, 917 (Tex. 2005) (per curiam). *Navy v. Coll. of the Mainland*, 407 S.W. 3d 893, 898-99 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to show a legitimate, non-discriminatory purpose for the

15

adverse employment action. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097. If the defendant presents a legitimate reason, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor. *Gonzalez v. Champion Techs., Inc.*, 384 S.W. 3d 462, 466 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing *Rachid v. Jack in the Box, Inc.*, 376 F. 3d 305, 312 (5th Cir. 2004)). A plaintiff can avoid summary judgment if the evidence taken as a whole creates a fact issue as to whether the employer's stated reason was not what actually motivated the employer and creates a reasonable inference that discriminatory intent was a determinative factor in the adverse employment action. *Gonzalez*, 384 S.W. 3d at 466. Although the burden of production shifts as described, the ultimate burden of persuasion remains on the plaintiff. *Id.*

Because the federal courts are closely divided on the issue, the Texas courts follow the plain meaning of section 21.001 (1) of the Texas Labor Code, which provides that a plaintiff establishes an unlawful employment practice by showing that discrimination was a "motivating factor" for the practice. *See Quantum Chem. Corp.*, 47 S.W. 3d at 474.

16

The Texas Labor Code prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. The relevant parts of the Act are patterned after Title VII of the federal Civil Rights Act. Texas Courts look to federal precedent for interpretive guidance to meet the legislative mandate that the Act is intended to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."

**The Articulated Legitimate Reason for Discharge Was Pretextual.**

In early 2011, approximately 10 months before McKenna was terminated, Fisher came to Harris and told her she wanted to fire McKenna and to start documenting McKenna's productivity as a reason to terminate her (CR.451-452). McKenna had not been written up in the many years she had been working at Ben Taub Hospital (CR.484).

In her first write up in June 2011, Baylor complained that McKenna was delinquent on chart reviews. McKenna had the chart reviews current within 10 days. Because McKenna was delinquent, she was punished by being ordered to work an additional 12-hour shift without pay (CR.484). Two other mid-levels were also delinquent on charts but they were not written up, nor were they required to serve an additional 12-hour shift, much less work without pay. *Id.*

17

**McKenna Was Treated Differently Than Other Similarly Situated Employees.**

McKenna was similarly situated in all respects to the other MLPs in the department. The MLPs in the department are the comparators for McKenna in this case.[2]

McKenna and all other MLP's worked under the same standards, the same supervisors (Harris and Fisher), and were subject to the same standards of conduct. It is undisputed that McKenna was terminated for performance for failing to met the requirement of seeing two patients a hour. It is established that none of the other MLPs were meeting this standard. And all MLPs failed to meet the standard for the seven months that Baylor kept charts on the productivity of the MLPs except for MLP in one month. McKenna's "performance" was nearly identical to the other MLPs, yet no other MLP was terminated for that reason.

Courts have stated that to prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness." although "precise equivalence in culpability between employees is not the ultimate question," *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11, (1976). The Fifth Circuit has held that to prove discrimination based on

---

[2] Dr. Fisher was not a similarly situated employee to McKenna. References to Fisher and her misconduct and falsification of records evidence her lack of credibility.

18

disparate discipline, the plaintiff must usually show "that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [female] employee whom [the company] retained." *Smith v. Wal–Mart Stores, Inc.*, 891 F. 2d 1177, 1180 (5ᵗʰ Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F. 2d 567, 570 (5ᵗʰ Cir. 982)). See also, *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W. 3d 915, 917-18 (Tex. 2005).

This is a classic case of disparate discipline. Monthly reports showing the numbers of patients seen by mid-level providers were created by Baylor Administration and distributed monthly. (CR.439-440). Harris informed her superiors that it would be difficult for MLP's to meet the goal of seeing two patients an hour because the MLP's did not have the resources (staffing, computers, support, and transportation) to be successful. (CR. 441). Harris was correct in this assessment.

Harris confirms that the reports (charts) prepared for April 2011 show that not one of the MLP's were seeing two patients an hour. (CR.48). Harris confirms no MLP was meeting expectations of seeing two patients per hour during the following month of May 2011. (CR.447). Harris confirms the charts are correct and that the productivity charts are what Baylor makes its employment decisions on. (CR.448). Harris acknowledges and confirms that not one MLP saw two patients per hour in the

19

same months of June, July, or August. Only one MLP out of the whole staff saw two patients per hour in September. (CR.448-449).

During this time, Harris states there were 12 MLP's in the section. Again, in October, and in November (when McKenna was fired for "performance relating to not seeing two patients per hour"), not one MLP saw two patients per hour. The same was true for December and January of 2012. (CR.450-451).

This was the basis on which McKenna was fired – not seeing two patients two per hour. The criterion is bogus, fellow MLP's were not meeting this goal. Finally, there is evidence that McKenna was the only employee that was "punished" by having to work an extra 12 hour shift without pay. There is evidence that her fellow employee Christie did work extra shifts, treated differently. Baylor has no adequate explanation for the disparate discipline based on performance.

McKenna did not conduct herself in an unprofessional manner. (CR.453,454). Harris, Director of MLP's observed McKenna interacting with other MLP's performing her job duties almost on a daily basis. (CR.453,455). Christie also observed McKenna working and never witnessed McKenna becoming angry or doing anything that would be considered unprofessional. Christie does not know of any other mid-level provider that did not get along with McKenna or who had complaints about her professionalism or productivity. And, perhaps most importantly, Friend in

20

explaining the reason for termination to the EEOC, does not mention professionalism as a cause or reason for termination. (CR.403). Only Fisher made any complaints and Harris, McKenna and Christie all dispute her unfounded allegations.

McKenna took pride in her work and disputes the allegation of lack of professionalism on her part. (CR.486). The evidence that McKenna did act in a professional manner is required to be accepted as true and all evidence to the contrary must be disregarded. *Nixon v. M Property Management Co. Inc.*, 690 S.W.2d 546 (Tex.-1985). McKenna submits that the allegations of unprofessionalism were false and simply a pretextual reason utilized by Fisher to terminate McKenna and create an open position for an MLP so that Christie could be hired in place of McKenna. It is a fair to conclude that Fisher's agenda was to terminate the oldest, white MLP Baylor had in the department and hire Christie, the 25 year old black female in her place. Christie was the first mid-level provider hired after McKenna was terminated. (CR.456). Harris had already interviewed Christie for mid-level provider position yet there was not a position available at Baylor when she was interviewed. (CR.457-458). The evidence points to the conclusion that Baylor had made the decision to hire Christie as a mid-level provider even before terminating McKenna (CR.458). Tiffany Patterson, another supervisor, stressed to Harris that she already had the discussion with Fisher and they wanted to bring Christie in as a full-time mid-level provider.

21

Telling Harris they wanted Christie hired was a reminder to Harris that Christie couldn't be hired as a full-time MLP because no position for a full-time mid-level provider had been approved- "no open position." (CR.458). Harris confirms that after October 31, 2011 when McKenna was fired, no one else other than Christie was interviewed for McKenna's now open full-time mid-level provider position. Baylor didn't bother to advertise or place any ads. (CR.460-461). Harris, well knew that such facts made McKenna's termination appear to be illegal discrimination. Recognizing that, Harris fired off an email to Fisher advising her that Baylor should interview others because it was a "sensitive time." (CR.465). Further, Harris confirmed that Fisher liked to hire younger MLP's. Harris confirms that Fisher "preferred to hire from 'the fellowship.'" (CR.461-482). In fact, the fellows hired by Baylor were quite young. Shepherd was born August 3, 1982 and Christie on June 9, 1986. (CR.369). However, the warning to Fisher by Harris to mask the signs of illegal discrimination was ignored. Only Christie was interviewed, and she was quickly hired as the next full-time MLP after McKenna was fired.

None of the MLPs that worked with McKenna at Baylor were Caucasian or over the age of 40 except for Trent Renfrow. The Emergency Department was also targeting Renfrow for termination. (CR.481). Renfrow quit before he was fired to take a job with the Veteran's Administration. (CR.480). The chart below identifies the

22

MLPs working with McKenna, their hire date, birth date and termination date. (CR.369)

| NAME | HIRE DATE | BIRTH DATE | TERM DATE | RACE |
|---|---|---|---|---|
| MARIA RODRIGUEZ | 10/28/08 | 10/25/71 | | HISPANIC |
| MARTIN LUKE | 3/16/09 | 3/9/78 | | ASIAN |
| CHARLES DANGERFIELD | 9/14/09 | 6/2/74 | | AFRICAN-AMERICAN |
| ALICIA NASH | 5/3/10 | 7/12/75 | | AFRICAN-AMERICAN |
| TRENT RENFROW | 8/23/10 | 6/7/69 | | CAUCASIAN |
| JACOB GEORGE | 4/11/11 | 3/12/88 | | ASIAN |
| VICKY McKENNA | 10/12/08 | 3/22/63 | 10/31/11 | CAUCASIAN |
| MANUEL VASQUEZ | 10/12/08 | 1/16/57 | 3/21/12 | HISPANIC |
| JENNIFER CU | 2/9/09 | 3/13/82 | 6/29/12 | ASIAN |
| KAYE-ANN CHRISTIE | 8/9/10 | 6/9/86 | | JAMAICAN |
| MARK SHEPHERD | 3/28/11 | 8/3/82 | 3/31/12 | CAUCASIAN |

## ISSUE TWO

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MCKENNA'S LIBEL CLAIM.**

> **A. McKENNA ESTABLISHED A PRIMA FACIE CASE OF LIBEL.**
>
> **B. MCKENNA'S AMENDED PLEADING IS NOT SUBJECT TO A PLEA OF LIMITATION BECAUSE OF APPLICATION OF THE RELATION BACK DOCTRINE.**
>
> **C. BAYLOR FAILED TO ESTABLISH A QUALIFIED PRIVILEGE.**
>
> **D. BAYLOR FAILED TO SHOW THE LIBELOUS STATEMENT WAS MADE WITH MALICE.**

**A. Prima Facie Case of Libel Established**

**The Elements of defamation.**

To recover for defamation, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, and (3) the defendant acted with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W. 2d 568, 571 (Tex. 1998). McKenna met her burden to establish a prima facie case of libel because there is

24

evidence that (1) the Defendant published a statement regarding the Plaintiff after she was fired to her fellow MLPs, then to the Texas Workforce Commission, (2) the publication was defamatory because it accused her of "Misconduct" which is defined in BCM Policies and Procedures, 02.5.41 – Discharge-Misconduct. (CR. 442). Even though the statements are defamatory, a plaintiff has no burden to establish this when a defendant moves for summary judgment, in fact it is the defendant's burden to show that the statements were not made with malice. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W. 2d 640, 646 (Tex. 1995) citing *Jackson v. Cheatwood*, 445 S.W. 2d 513, 514 (Tex. 1969).

The various types of misconduct are set out in Baylor's employee policy manual. (CR.422,423):

"Dishonesty, theft or illegal business activities;" (No allegations of such conduct against McKenna by Baylor).

"Falsification of records;" (No allegations of such conduct against McKenna by Baylor).

"Willful Neglect of job duties;" (No allegations of such conduct against McKenna by Baylor).

"Insubordination, refusal to perform work as assigned or directed;" (No allegations of such conduct against McKenna by Baylor).

"Unauthorized or excessive absenteeism or tardiness;" (No allegations of such conduct against McKenna by Baylor). (McKenna had only one tardy in three years and not given as reason for discharge).

25

"Fighting (verbal or physical), yelling or other disruptive aggressive behavior;" (No allegations of such conduct against McKenna by Baylor when she was terminated either orally or through final write up).

"Gambling in the work place;" (No allegations of such conduct against McKenna by Baylor).

"Drinking on the job, or reporting to work while intoxicated;" (No allegations of such conduct against McKenna by Baylor).

"Repeated violation of department of College 'rules or policies;" (No allegations of such conduct against McKenna by Baylor).

"Actions on or off duty which is injurious to the College." (No allegations of such conduct against McKenna by Baylor). (CR.422,423).

Appellant submits that being falsely accused and fired by your employer for misconduct is defamatory. McKenna need not establish that the statement was made with malice since she was not a public official. The publication was untrue as the official reason for McKenna's discharge was "Performance" as and confirmed by Fisher and Harris. It was only after she was fired and no longer an employee that the reason for termination of McKenna was changed to misconduct. Friend as Vice President of Baylor represented to the EEOC in May 2012 that the reason for discharge for McKenna was "solely for her performance." (CR. 424,425). McKenna has no duty to prove malice. But, the existence of actual malice with respect to a qualified privilege, defamation may be inferred from the relationship of the parties, the circumstances attending publication, the language used, and from words or acts of the

26

defendant before, at, or after time of communication. *Stearns v. McManis*, 543 S.W. 2d 659 (Tex. Civ. App. – Houston [1st Dist.] 1976), dismissed (Mar. 9, 1977). Importantly, the court has opined that proving ill will regarding disparaging references are questions of fact for the jury in resolving the issue of malice in a suit for slander. *Id.*

To invoke the conditional or qualified privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W. 2d 640, 646 (Tex. 1995) citing *Jackson v. Cheatwood*, 445 S.W. 2d 513, 514 (Tex. 1969). Thus, even assuming that Baylor established other elements of the privilege, which it has not, it failed to produce any evidence that the defamatory statement was made with the absence of malice. As a result, Baylor failed to establish the elements of qualified privilege. This court should reverse the case on the issue of defamation.

B.      **McKenna's Amended Pleading Is Not Subject To A Pleas Of Limitation Becasuesof Application of the Relation Back Doctrine.**

McKenna filed her original petition December 20, 2012. She filed her first amended petition adding a cause of action for libel on May 19, 2014. While libel has a limitation period of one year from the time a plaintiff knew of the publication,

27

the facts in this case dictate that the cause of action for libel survives by virtue of the application of the relation back doctrine.

Tex. Civ. P. & Rem. Code sec. 16.068 provides:

> *If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.* Tex. Civ. Prac. & Rem. Code Ann. § 16.068.

The relation back doctrine applies in this case because the libel claim is not based on a new, distinct, or different transaction or occurrence. The transaction upon which the claim of discrimination is based arises out of the termination on October 31, 2011. The determination to change the reason for termination occurred on the same day or next day. The transaction or occurrence is the same, to wit, the firing and the reason ascribed to the event. McKenna's case is unlike the cases relied on by Baylor. In *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W. 3d 563 (Tex. App--- Austin 2007 pet. denied), the claim of defamation did not occur until after the original petition had been filed and each communication was addressed to a different audience about specific issues. Notably they were issued

28

months apart from the other communications. Thus, each of the communications in that case were treated as separate transactions.

"Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926). Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure employs a standard similar to Section 16.068, allowing relation back of a claim, pleaded by amendment, "that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[T]he Search ... is for a common core of operative facts in the two pleading." 6 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure Section 1497 (3rd ed. 2010). In *Lexington Ins. Co. v. Daybreak Exp., Inc.*, 393 S.W. 3d 242, 245 (Tex. 2013) the Court discussed the relation back doctrine and concept of "transaction or occurrence" as a concept fundamental to modern civil procedure. See, e.g., Tex. R. Civ. P. 38 (third-party practice), 40 (joinder), 50(pleading), 97(counterclaims and cross-claims); Tex. Civ. Prac. & Rem. Code § 1497 (3rd ed. 2010).

Baylor in its motion for summary judgment cites *Waddill v. Phi Gamma Delta Fraternity*, 114 S.W. 3d 136, 144 (Tex. App.-Austin 2003, no pet.), in support of its position that Section 16.068 does not apply. However, the facts were far different in that case. In *Waddill*, the plaintiff had two entirely distinct claims, the first for hazing while he was a member of the fraternity and the latter for slander, which were not tied together in time or to one event. The two claims arose over a year apart. Waddill sought to relate to his hazing claim, which arose during his pledgeship to conduct a year after his departure from the fraternity. Contrary to the *Waddill* case, McKenna's claim of libel all arose out of the core facts surrounding her termination of October 31, 2011 on which her other claims are based.

The whole purpose of section 16.068 is to limit the application of the statute of limitations to amended pleadings. The test is as follows: if the amended pleading does not allege a wholly new distinct or different transaction, then it relates back to the original filing, and is not subject to a limitations defense. *Ex parte Goad*, 690 S.W. 2d 894, 896 (Tex. 1985), cert. denied, 493 U.S. 1021, (1990); It is immaterial that the later pleading asserts a different cause of action. *Knesek v. Witte*, 754 S.W. 2d 814, 816 (Tex. App. – Houston [1st Dist.] 1988, writ denied) (citing *Pelt v. American Casualty Co.*, 513 S.W. 2d 128, 129-30 (Tex. Civ. App. – Dallas 1974, writ ref'd n.r.e)). Even if the amended petition contains new causes of action, the new

30

causes are not barred by the statute of limitations unless they arise from wholly different transaction. *Providence Hosp. v. Truly*, 611 S.W. 2d 127, 133-34 (Tex. Civ. App. – Waco 1980, writ dism'd).

The statute of limitations does not bar McKenna's claims because her amended petition asserting the additional cause of action of libel is based upon the same transaction or occurrence as her cause of action for illegal and discriminatory discharge under the Texas Labor Code. The transaction at issue, her termination, and the reasons ascribed to it are inextricably intertwined.

The cases relied upon by Baylor in its motion for summary judgment regarding the relations back are simply quite different from the facts of this case.

McKenna believed she was compelled to inform prospective employers because she had been told that she was terminated for "misconduct" by Baylor. (CR.317,486,). Not surprisingly, she received no offer of work from any employer to which she made the disclosure. *Id.*

The case law makes clear the broad scope of the relation back doctrine and its applicability to McKenna to her termination. Application of the relation back doctrine saves the claim from being barred by the statute of limitations.

**Baylor Had No Qualified Privilege**

To establish the affirmative defense of qualified privilege, Baylor was required to show that the alleged defamatory statement: (1) was made without malice; (2) concerned a subject matter of sufficient interest to the author or was in reference to a duty owed by the author; and (3) was communicated to another party with a corresponding interest or duty. See *Id.* (citing *Saudi,* 176 S.W. 3d at 118; *Austin v. Inet Techs., Inc.,* 118 S.W. 2d 491, 496 (Tex. App. – Dallas 2003, no pet.); *San Antonio Credit Union v. O'Connor,* 115 S.W. 3d 82, 99 (Tex. App. – San Antonio 2003, pet. denied)). Baylor failed to produce any evidence to establish it met these requirements to claim a qualified privilege.

**D.      Baylor Failed to Show The Libelous Statement Was Made With Malice.**

Further, to invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W. 2d 640, 646 (Tex. 1995) citing *Jackson v. Cheatwood,* 445 S.W. 2d 513, 514 (Tex.1969); *Goodman v. Gallerano,* 695 S.W. 2d 286, 287–88 (Tex. App. – Dallas 1985, no writ). Baylor has no evidence that the communication was made without malice. Its affirmative defense fails.

32

The communications which are libelous were not made during an investigation. There was no investigation and Baylor makes no claim of performing one. The communication was made shortly after Plaintiff was fired. (CR.421). The communication was not an e-mail regarding an investigation. The e-mail advising of the discharge for misconduct was sent to every mid-level provider in the department. *Id.* There is no evidence that any of those mid-level providers were involved in an investigation regarding McKenna. No mid-level provider could be considered to be a person "with a need to know." They were not Plaintiff's supervisor. The mid-level providers worked separately and independently to see patients. Communications that pass beyond those with an interest or duty in the subject matter are not privileged. *Randall's Food Mkts., Inc.*, 891 S.W. 2d at 646. (Tex.1995). Because there was no investigation either before or after she was fired and no reason to advise her fellow employees that Baylor allegedly fired McKenna for misconduct, the defense claim of qualified or conditional privilege fails.

## ISSUE THREE

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON APPELLANT'S BREACH OF CONTRACT CLAIM BECAUSE THERE WAS ADEQUATE CONSIDERATION AND GENUINE ISSUES OF MATERIAL FACT EXIST FOR THE FINDER OF FACT.**

Parties enter into a binding contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Buxani v. Nussbaum*, 940 S.W. 2d 350, 352 (Tex. App. – San Antonio 1997, no writ); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W. 2d 473, 477 (Tex. App. – El Paso 1993, no writ). The determination of a meeting of the minds and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. See *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W. 2d 343, 348 (Tex. App. – Ft. Worth 1996, no writ) (stating that whether conduct exhibits acceptance is a question of fact for the trier of fact.); *Hallmark v. Hand*, 885 S.W. 2d 471, 477 (Tex. App. – El Paso 1994, writ denied). Granted, consideration is

34

a fundamental element of any valid contract. *Smith v. Renz*, 840 S.W. 2d 702, 704 (Tex. App. – Corpus Christi 1992, writ denied).

**McKenna has presented evidence of each element.**

McKenna explains the contract was formed during the termination meeting on October 31, 2011. (CR.485). An offer was made by Baylor to pay McKenna her full salary and benefits for 30 days after termination on the condition that she not come back on the premises during that period or make any contact with any mid-level provider at the work place. *Id.* Secondly, McKenna verbally assured the Baylor representatives that she would comply with those conditions. *Id.* Whether the actions and communication of the parties established a meeting of the minds, or assent to be bound is a question of fact for the jury.

Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W. 2d 492, 496 (Tex. 1991). It can be either a benefit to the promisor or a detriment to the promise. *Id.* It may consist of some right, interest, or profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss or responsibility that is undertaken or incurred by the other party. *Solomon v. Greenblatt*, 812 S.W. 2d 7, 15 (Tex. App. – Dallas 1991, no writ). A promise for a promise is sufficient consideration in Texas. *Crest Const., Inc. v.*

35

*Murray*, 888 S.W. 2d 931, 942 (Tex. App. – Beaumont 1994), reversed on other grounds, 900 S.W. 2d 342 (Tex. 1995).

Here there was a promise for a promise. Baylor promised to pay McKenna full salary and extend benefits for thirty days. In return McKenna promised to not come on the premises or speak with her fellow MLPs. (CR.495, para. 11). The evidence presented by McKenna establishes through what she said and did that she accepted the offer and intended to be bound. Whether the conduct of both parties exhibited acceptance to be bound is a question of fact for the jury. *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d at 348 (stating that whether conduct exhibits acceptance is a question of fact for the trier of fact); *Hallmark v. Hand*, 885 S.W. 2d 471, 477 (Tex. App. – El Paso 1994, writ denied).

Even if an offer and acceptance are not recorded on paper, dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement. *Smith v. Renz*, 840 S.W. 2d 702, 704 (Tex. App. – Corpus Christi 1992, writ den.). *City of Houston v. First City*, 827 S.W. 2d 462, 473 (Tex. App. – Houston [1st Dist.] 1992, writ denied). Accordingly, the parties' conduct may convey an objective assent to the terms of an agreement, and whether their conduct evidences their agreement is a question to be resolved by the finder of fact. *Estate of Townes v.*

36

*Townes*, 867 S.W. 2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied). If the finder of fact determines that one party reasonably drew the inference of a promise from the other party's conduct, then that promise will be given effect in law. *E–Z Mart Stores, Inc. v. Hale*, 883 S.W. 2d 695, 699 (Tex. App. – Texarkana 1994, writ denied).

Here there is sufficient evidence to at least create an issue of fact for the jury on the element of meeting of the minds and consent. The court should reverse the trial court's summary judgment on the issue of contract as a material issue of fact has been presented which requires the fact finder to make the determination.

## PRAYER

Appellant Vicky McKenna requests that the Court of Appeals find that the trial court erred in granting summary judgment in favor of Baylor College of Medicine and prays that the court reverse the summary judgment order of the 11th Judicial Court and remand the case to the trial court for further proceedings.

Respectfully submitted,


*/S/ Glenn W. Patterson, Jr.*
Glenn W. Patterson, Jr.
State Bar No. 15612500
11 Greenway Plaza, Suite 2820
Houston, Texas 77046
(713) 961-1200
glenn@patterson-adr.com

Attorney For Appellant
Vicky mckenna

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent to opposing counsel and all parties of interest on July 31, 2015.

Via Fax:
Shauna Johnson Clark
Attorney at Law
1301 McKinney
Suite 5100
Houston, Texas 77010-3095

*/S/ Glenn W. Patterson, Jr.*

Glenn W. Patterson, Jr.

# APPENDIX

Two documents appear in the Appendix, each of which are referred to in the Statement of the Case. Appellant has filed a Request for Documents To Be Included in the Clerk's Record. The documents are: (1) Rule 11 Agreement, marked as "A-1", and Notice of Partial Non- Suit Without Prejudice, marked as A-2. The Clerk's date for compliance is August 15, 2015, a date that is beyond the date this brief is due to be filed with the Court.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the word limit limitations of Tex. R. App. P. 9.4 (i) (2) because this brief contains 8,645 words, excluding parts of the brief exempted by Tex. R. App. P. 9.4 (i) (1).

2. This brief complies with the form requirements of Tex. R. App. P. 9.4.

/S/ Glenn W. Patterson, Jr.
Glenn W. Patterson, Jr.
Attorney for Applicant

Dated: July 31, 2015.

CAUSE NO. 2012-74884

| | | |
|---|---|---|
| VICKY MCKENNA<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | HARRIS COUNTY, TEXAS |
| BAYLOR COLLEGE OF MEDICINE<br>Defendant | §<br>§<br>§ | 11th JUDICIAL DISTRICT |

### RULE 11 AGREEMENT

Attached hereto is the Rule 11 Agreement of Counsel.

Respectfully submitted

By: /s/ Glenn W. Patterson, Jr.
Glenn W. Patterson, Jr.
State Bar No. 15612500
11 Greenway Plaza, Suite 2820
Houston, Texas 77046
(713) 961-1200
(713) 961-0941 (Fax)
glenn@patterson-adr.com

**ATTORNEY FOR PLAINTIFF
VICKY MCKENNA**

Unofficial Copy Office of Chris Daniel District Clerk

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record, pursuant to the Texas Rules of Civil Procedure on December 18, 2014.

**_Via Fax (713) 651-5246_**
Shauna Clark
Heather Sherrod
Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010

_/s/ Glenn W. Patterson, Jr._
Glenn W. Patterson, Jr.

Unofficial Copy Office of Chris Daniel District Clerk

Chris Daniel - District Clerk
Harris County
Envelope No: 3531135
By: DE LA ROSA, GABRIELA

Unofficial Copy Chris Daniel District Clerk

**GLENN W. PATTERSON, JR.**
ATTORNEY AT LAW
11 GREENWAY PLAZA, SUITE 2820
HOUSTON, TEXAS 77046

(713) 961-9688 TELEPHONE
(713) 961-0941 FACSIMILE

EMAIL ADDRESS:
glenn@patterson-adr.com

December 11, 2014

*Via Email: shauna.clark@nortonrosefulbright.com*

Shauna Clark
Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010

Re:    Cause No. 2012-74884; *Vicky McKenna v. Baylor College of Medicine;* In the
        11th District Court of Harris County, Texas

Dear Ms. Clark;

        Please let this letter memorialize our agreement regarding establishing of a method for
having the partial summary judgment granted by the Court become final so that the case may be
appealed without delay. We agree that Plaintiff may dismiss her remaining claim of breach of
contract without prejudice. Upon issuing of the mandate by the Court of Appeals, regardless of the
Court's decision, Plaintiff may reassert this claim for breach of contract and, in so doing,
Defendant agrees not to assert that the claim is barred for any reason relating to the dismissal
without prejudice, including the affirmative defense of statute of limitations.

        If this accurately reflects our agreement, please sign below and return this letter to me.
Please do not hesitate to contact me should you have any questions.

                                                Very truly yours,

                                                Glenn W. Patterson, Jr.

Agreed to by:

Shauna Clark Johnson

1/22/2015 11:42:02 AM
Chris Daniel - District Clerk Harris County
Envelope No. 3859770
By: GABRIELA COX
Filed: 1/22/2015 11:42:02 AM

CAUSE NO. 2012-74884

P.2
162F
NUA

| | | |
|---|---|---|
| VICKY MCKENNA<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| VS. | §<br>§ | HARRIS COUNTY, TEXAS |
| BAYLOR COLLEGE OF MEDICINE<br>Defendant | §<br>§<br>§ | 11th JUDICIAL DISTRICT |

## NOTICE OF PARTIAL NON-SUIT WITHOUT PREJUDICE

TO THE HONORABLE JUDGE OF SAID COURT:

1. Plaintiff files this Partial Non-Suit Without Prejudice, but only as to her claim for breach of contract for non-payment for one twelve hour shift that she worked, but for which she was not paid.

2. This partial non-suit is filed subject to the Rule 11 Agreement of Counsel filed with this Court on December 18, 2014.

3. Plaintiff does not non-suit any other claims or cause of action, and specifically states that all other causes of action are retained, including breach of contract for failure to pay Plaintiff for thirty (30) days after she was terminated.

Respectfully submitted,


By: /s/ Glenn W. Patterson, Jr.
  Glenn W. Patterson, Jr.
  State Bar No. 15612500
  11 Greenway Plaza, Suite 2820
  Houston, Texas 77046
  (713) 961-1200
  (713) 961-0941 (Fax)
  glenn@patterson-adr.com

ATTORNEY FOR PLAINTIFF
VICKY MCKENNA

Unofficial Copy Office of Chris Daniel District Clerk

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record, pursuant to the Texas Rules of Civil Procedure on January 22, 2015.

*Via Fax (713) 651-5246*
Shauna Clark
Heather Sherrod
Fulbright & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010

/s/ Glenn W. Patterson, Jr.
Glenn W. Patterson, Jr.

2